# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | |
|---|---|
| BP PRODUCTS NORTH AMERICA INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CARBOLINE COMPANY, TRINITY STEEL FABRICATORS, INC., SCHUFF STEEL COMPANY, TECON SERVICES, INC., and ALFRED MILLER CONTRACTING COMPANY | ) ) ) ) ) ) |
| Defendants. | ) |

Case No:

**2 12 C V 502**

**-FILED-**

DEC 03 2012

At _____ M.
ROBERT N. TRGOVICH, Clerk
U.S DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

## COMPLAINT

BP Products North America Inc. ("BP") brings this action for breach of contract, breach of warranties, negligence, and other relief. In support of its Complaint against the defendants, BP alleges and states as follows:

1.     BP is in the midst of a multi-billion dollar construction project at BP's refinery in Whiting, Indiana (the "Refinery"). BP's project is commonly referred to as the Whiting Refinery Modernization Project ("Modernization Project"). Among other things, BP's Modernization Project will enable the Refinery to process heavier Canadian crude oils.

2.     To execute the Modernization Project, BP required thousands of tons of new structural steel. Before installation at the Refinery, certain structural steel was coated with a protective layer of light-weight fireproofing material known as Pyrocrete® 241 ("Pyrocrete").

3.     Structural steel coated with Pyrocrete was installed as part of the Modernization Project, and the Pyrocrete is now degrading prematurely and causing damage to BP's property.

BP is remediating the damage caused by the defective Pyrocrete and defective preparation and application of the Pyrocrete, and BP will have to continue to remediate the defective conditions and property damage at great cost to BP.

4.      The degradation of the Pyrocrete is caused by defects in the preparation or application of the Pyrocrete to the structural steel and/or defects in the Pyrocrete itself.  BP therefore brings this lawsuit against those who contracted to supply the Pyrocrete-coated structural steel to BP, those who were required to properly prepare and apply the Pyrocrete to the structural steel, and the company that manufactured and supplied the Pyrocrete for use in BP's Modernization Project.

### Jurisdiction and Venue

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Indiana.

### Parties

7.      At all relevant times, BP was and is a Maryland Corporation with its principal place of business located in Warrenville, Illinois.  BP has significant operations in Whiting, Indiana at the Refinery.

8.      Upon information and belief, at all relevant times, defendant Trinity Steel Fabricators, Inc. ("Trinity Steel") was and is a Delaware corporation doing business in the United States, with its principal place of business located in Houston, Texas.  At all relevant

- 2 -

times, Trinity Steel engaged in the activities of manufacturing and selling structural steel, including structural steel protected by fireproofing. Trinity Steel has engaged in continuous and systematic business throughout Indiana and this District. BP's claims against Trinity Steel arise from Trinity Steel's contract to provide structural steel coated with Pyrocrete for BP's Refinery in Whiting, Indiana.

9.      Upon information and belief, at all relevant times, defendant Schuff Steel Company ("Schuff Steel") was and is a Delaware corporation doing business in the United States, with its principal place of business located in Phoenix, Arizona. At all relevant times, Schuff Steel engaged in the activities of manufacturing and selling structural steel, including structural steel protected by fireproofing. Schuff Steel has engaged in continuous and systematic business throughout Indiana and this District. BP's claims against Schuff Steel arise from Schuff Steel's contract to provide structural steel coated with Pyrocrete for BP's Refinery in Whiting, Indiana.

10.      Upon information and belief, at all relevant times, defendant Alfred Miller Contracting Company ("Alfred Miller") was and is a Louisiana corporation doing business in the United States, with its principal place of business located in Lake Charles, Louisiana. At all relevant times, Alfred Miller engaged in the activities of manufacturing and selling proprietary Pyrocrete precast flange caps and shop-applied and field-applied steel fireproofing services to the petrochemical industry and others. BP's claims against Alfred Miller arise from Alfred Miller's manufacture and sale of its proprietary Pyrocrete precast flange caps for structural steel used at the Refinery in Whiting, Indiana, as well as Alfred Miller's fireproofing services for the structural steel.

11.     Upon information and belief, at all relevant times, defendant Tecon Services Inc. ("Tecon") was and is a Texas corporation doing business in the United States, with its principal place of business located in Houston, Texas. At all relevant times, Tecon engaged in the activities of applying and selling shop-applied and field-applied fireproofing services to the petrochemical industry and others. BP's claims against Tecon arise from Tecon's fireproofing services for the steel used at BP's Refinery in Whiting, Indiana.

12.     Upon information and belief, at all relevant times, defendant Carboline Company ("Carboline") was and is a Delaware corporation doing business in the United States, including the State of Indiana and Lake County, with its principal place of business located in St. Louis, Missouri. At all relevant times, Carboline engaged in the manufacture, marketing, and sale of fireproofing products, including Pyrocrete. Carboline has engaged in continuous and systematic business throughout Indiana and this District, including soliciting, marketing, and selling its Pyrocrete product and other products. BP's claims against Carboline arise from Carboline's defective Pyrocrete product used to fireproof the steel at BP's Refinery in Whiting, Indiana.

## **Allegations Common to All Counts**

13.     BP contracted with defendants Trinity Steel and Schuff Steel to supply structural steel for the Modernization Project.

14.     Trinity Steel and Schuff Steel each entered into subcontracts with Alfred Miller Contracting Company ("Alfred Miller") and/or Tecon Services Inc. ("Tecon") to prepare and apply the Pyrocrete product to the structural steel.

15.     Alfred Miller and Tecon purchased the Pyrocrete product from Carboline. Alfred Miller and Tecon prepared and applied the Pyrocrete product to structural steel supplied by

- 4 -

Trinity Steel and/or Schuff Steel. Alfred Miller and Tecon then sent the structural steel coated with Pyrocrete to BP for installation and use as part of BP's Modernization Project.

16.    Pyrocrete is a cementitious inorganic fireproofing product that Carboline recommends for use as outdoor fire protection in petrochemical plants, refineries, and offshore platforms.

17.    Carboline states the following in its product literature:

> Pyrocrete 241 has been the preferred cementitious fireproofing material in the marketplace for over 30 years, providing industry leading ratings, high density and excellent physical properties. This product is recommended for the fire protection of structural steel, vessel skirts, bulkheads, LPG vessels, LNG terminals, and upgrading the fire resistance of existing concrete.

18.    Pyrocrete weighs significantly less than concrete and according to Carboline, does not require a coating system. Carboline also states that Pyrocrete is a durable material that resists cracking and impact damage, prevents disbondment, and requires less material for projects.

19.    Pyrocrete is also an Underwriters Laboratory listed product – Design Number UL XR701.

20.    Relying upon recommendations from Carboline and Pyrocrete's marketing material, BP selected Pyrocrete as its preferred fireproofing product, and specified that the Pyrocrete be applied to certain structural steel in a minimum thickness of 1 5/16 inches, providing a fireproof rating of 2 1/2 hours under UL XR701.

21.    The Pyrocrete product supplied by Carboline for the Modernization Project does not perform as promised and/or as required and is defective.

22.     In addition or in the alternative, Alfred Miller's and Tecon's preparation and/or application of the Pyrocrete product to the structural steel was defective because it failed to comply with applicable contract documents, manufacturer directions, and/or industry standards.

23.     At various locations within the Refinery, the Pyrocrete exhibits the following problems and defects:

> a.  Surface softness, crumbling, and rounding of originally square corners;
>
> b.  Discoloration;
>
> c.  Low hardness and compressive strength;
>
> d.  Delamination and/or flaking of surface material(s);
>
> e.  Cracking, pitting, and splitting; and
>
> f.  Loss of material cover (reduced thickness, voids, cracks, other discontinuities).

24.     The defective Pyrocrete product, or the defective preparation and/or application of the Pyrocrete product, has resulted in premature degradation of the Pyrocrete and property damage.

25.     Based on BP's investigation to date, on information and belief, one or more of the following is true:

> a.  Alfred Miller and/or Tecon failed to mix or prepare the Pyrocrete as required under the contract documents, the manufacturer's specifications and directions, or otherwise, which caused BP to receive structural steel with defectively applied Pyrocrete;
>
> b.  Alfred Miller and/or Tecon failed to apply the Pyrocrete to the structural steel as required under the contract documents, the manufacturer's specifications

- 6 -

and directions, or otherwise, which caused BP to receive structural steel with defectively applied Pyrocrete;

c. Alfred Miller's Pyrocrete precast flange caps were not manufactured as required under the contract documents, the manufacturer's specifications and directions, or otherwise, which caused BP to receive structural steel with defectively applied Pyrocrete;

d. Alfred Miller applied the Pyrocrete with gaps in the underlying lathe in violation of contract's plans and specifications, which caused BP to receive structural steel with defectively applied Pyrocrete;

e. Alfred Miller otherwise failed to apply or install its Pyrocrete precast flange caps to the structural steel as required by the contract documents, the manufacturer's specifications and directions, or in a good and workmanlike manner, which caused BP to receive structural steel with defectively applied Pyrocrete;

f. Alfred Miller and/or Tecon "skim coated" the Pyrocrete during application, which caused BP to receive structural steel with defectively applied Pyrocrete;

g. Alfred Miller and/or Tecon "over worked" the Pyrocrete during application, which caused BP to receive structural steel with defectively applied Pyrocrete;

h. Trinity and Schuff failed to supply structural steel with Pyrocrete that was properly prepared and applied as required by the contract documents, which caused BP to receive structural steel with defectively applied Pyrocrete;; and/or

i.   Carboline's Pyrocrete product is defective in that it degrades even when it is applied to structural steel as required by Carboline's documents, specifications, and directions, which caused BP to receive structural steel with defective Pyrocrete.

26.    The defects in the Pyrocrete product itself and/or defects in the preparation and application of the Pyrocrete to the structural steel are causing damage to the Pyrocrete itself, and are also causing physical damage to other property, namely, the structural steel to which the Pyrocrete product was applied.

27.    BP provided timely notice to the Defendants regarding the problems with the Pyrocrete.

28.    The Defendants have all  refused to accept any responsibility for the problem or to remedy the problem.

29.    Earlier this year, BP commenced remediation work to address the problems with the Pyrocrete.  The remediation includes, among other things, removing and replacing degraded Pyrocrete, preparing the Pyrocrete for application of a coating system, and applying a coating system to prevent water penetration and further damage to the Pyrocrete itself and the structural steel.

30.    All conditions precedent, if any, to BP being entitled to request and recover the relief requested herein have occurred, been performed, or have been waived or are otherwise not required to be satisfied under the facts and circumstances of this case.

31.    BP has suffered damages in excess of $75,000.  BP's damages include, without limitation, costs incurred and to be incurred to investigate, conduct analysis and perform

additional testing, costs incurred and to be incurred to repair and coat the defective Pyrocrete and property damage, loss of use, and increased future maintenance costs.

## CAUSES OF ACTION

### COUNT 1
### Breach of Contract - Trinity Steel

32.     BP re-alleges and incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

33.     BP issued purchase orders to Trinity Steel for the structural steel, including structural steel protected by Pyrocrete, including PSW021-12008503 BPOOC and B3CX-2-2001-02-12PS-MD1/B3CX100951. True and correct copies of these purchase orders are attached as Exhibit A and B.

34.     The Purchase Orders incorporated and included the terms contained in a Framework Agreement with Trinity Steel, Contract Number OCC-IPMT-CO-0.0-0108, a true and correct copy of which is attached hereto as Exhibit C.

35.     The Purchase Orders also incorporated and included terms of other documents and specifications that are too voluminous to attach and file with this Complaint. The entire contract between BP and Trinity Steel is referred to herein as the "Trinity Steel Purchase Orders."

36.     Trinity Steel was and is responsible to BP under the terms of the Trinity Steel Purchase Orders for the work of its subcontractors in the preparation and application of the Pyrocrete to the structural steel supplied by Trinity Steel for the Modernization Project.

37.     Trinity Steel breached the Trinity Steel Purchase Orders when, on information and belief, its subcontractors Alfred Miller and/or Tecon failed to prepare and apply the

Pyrocrete product to the structural steel in accordance with the requirements of the Trinity Steel Purchase Orders and/or industry standards.

38.     Trinity Steel's breaches of the Trinity Steel Purchase Orders caused BP damages, including, without limitation, the costs that BP has incurred and will incur to investigate and remedy the defective conditions and property damage that now exist at BP's Modernization Project.

39.     BP seeks a judgment from and against Trinity Steel for all damages BP has suffered and will continue suffer in an amount in excess of the minimal jurisdictional limits of this Court, plus pre-judgment interest, post-judgment interest, and all costs of court as allowed by law.

## COUNT 2
### Breach of Express Warranty - Trinity Steel

40.     BP re-alleges and incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

41.     The Terms and Conditions of the Trinity Steel Framework Agreement incorporated into the Trinity Purchase Orders provides the following warranties:

> Seller warrants to Buyer, its contractors, agents and re-sellers that the products sold by Seller hereunder will meet the specifications, drawings or descriptions on the face hereof or on attached specification sheets (which are incorporated herein by reference), and will be of good and merchantable quality and will be fit for Buyer's intended purposes if known to Seller, free of defects in material and workmanship.

Exhibit C, General Terms and Conditions at Section 6.

42.     One of the Trinity Steel Purchase Orders includes the following additional warranties:

> Seller, at its expense, (including without limitation costs of removal, packing, transportation and reinstallation) shall promptly either repair or

- 10 -

replace any goods and services furnished to Buyer which within twelve (12) months after operational start-up or within eighteen (18) months after shipment, whichever occurs first, shall fail to conform to the requirements of this Purchase Order. Goods or services that are repaired or replaced by Seller pursuant to this Warranty shall be warranted, according to the terms hereof, for an additional twelve (12) months from the date of such repair or replacement. Seller will at any time be chargeable for repairs made by Buyer to correct such a failure to meet the warranty herein when Seller has been given notice of such failure and thereafter has failed to take prompt and effective action to correct the failure and thereafter has failed to take prompt and effective action to correct the failure in accordance with the foregoing.

Exhibits B at Section 11.0.

43.     These express warranties were part of the basis of the bargain between Trinity Steel and BP, and BP reasonably relied upon the representations in Trinity Steel's warranties.

44.     Trinity Steel knew that BP intended to use and install the structural steel coated with Pyrocrete supplied by Trinity Steel for BP's Modernization Project.

45.     Trinity Steel breached the express warranties by, among other things, supplying BP with structural steel that, on information and belief, had Pyrocrete that was not prepared and/or applied in accordance with the requirements of the Trinity Steel Purchase Orders and/or industry standards.

46.     Trinity Steel received sufficient and timely notice of its breach of express warranties as alleged herein.

47.     Despite such notice and demands for repair and/or reimbursement, and despite Trinity Steel's knowledge of defects in the application or manufacture of the Pyrocrete, Trinity Steel failed and refused to honor its warranty obligations.

48.     Trinity Steel's breaches of the express warranties caused BP damages, including, without limitation, the costs that BP has incurred and will incur to investigate and remedy the defective conditions and property damage that now exist at BP's Modernization Project.

- 11 -

49.     BP seeks a judgment from and against Trinity Steel for all damages BP has suffered and continues to suffer in an amount in excess of the minimal jurisdictional limits of this Court, plus pre-judgment interest, post-judgment interest, and all costs of court as allowed by law.

### COUNT 3
### Breach of Contract – Schuff Steel

50.     BP re-alleges and incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

51.     BP issued purchase orders to Schuff Steel for structural steel, including structural steel protected by Pyrocrete, including Purchase Order No. B3CX-2-2001-01-GOHT-FLD.  A true and correct copy of this purchase order is attached as Exhibit D.

52.     The Purchase Order incorporated and included the terms contained in a Framework Agreement with Schuff Steel, Contract Number OCC-IPMT-CO-0.0-0106 attached hereto as Exhibit E.

53.     The Purchase Order also incorporated and included terms of other documents or specifications that are too voluminous to attach and file with this Complaint.  The entire contract between BP and Schuff Steel is referred to herein as the "Schuff Steel Purchase Order."

54.     Schuff Steel was and is responsible to BP under the terms of the Schuff Steel Purchase Orders for the work of its subcontractors in the preparation and application of the Pyrocrete to the structural steel supplied by Schuff Steel for BP's Modernization Project.

55.     Schuff Steel breached the Schuff Steel Purchase Orders when, on information and belief, its subcontractors Alfred Miller and/or Tecon failed to prepare and apply the Pyrocrete product to the structural steel in accordance with the requirements of the Schuff Steel Purchase Orders and/or industry standards.

- 12 -

56.     Schuff Steel's breaches of the Schuff Steel Purchase Orders caused BP damages, including, without limitation, the costs that BP has incurred and will incur to investigate and remedy the defective conditions and property damage that now exist at BP's Modernization Project.

57.     BP seeks a judgment from and against Schuff Steel for all damages BP has suffered and will continue suffer in an amount in excess of the minimal jurisdictional limits of this Court, plus pre-judgment interest, post-judgment interest, and all costs of court as allowed by law.

## COUNT 4
## Breach of Express Warranty - Schuff Steel

58.     BP re-alleges and incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

59.     The Terms and Conditions of the Schuff Steel Framework Agreement incorporated into the Schuff Steel Purchase Order provides the following warranties:

> Seller warrants to Buyer, its contractors, agents and re-sellers that the products sold by Seller hereunder will meet the specifications, drawings or descriptions on the face hereof or on attached specification sheets (which are incorporated herein by reference), and will be of good and merchantable quality and will be fit for Buyer's intended purposes if known to Seller, free of defects in material and workmanship.

Exhibit E, General Terms and Conditions Section 6.

60.     The Schuff Steel Purchase Order includes the following additional warranties:

> Seller, at its expense, (including without limitation costs of removal, packing, transportation and reinstallation) shall promptly either repair or replace any goods and services furnished to Buyer which within twelve (12) months after operational start-up or within eighteen (18) months after shipment, whichever occurs first, shall fail to conform to the requirements of this Purchase Order.  Goods or services that are repaired or replaced by Seller pursuant to this Warranty shall be warranted, according to the terms hereof, for an additional twelve (12) months from the date of such repair

- 13 -

> or replacement. Seller will at any time be chargeable for repairs made by
> Buyer to correct such a failure to meet the warranty herein when Seller has
> been given notice of such failure and thereafter has failed to take prompt
> and effective action to correct the failure and thereafter has failed to take
> prompt and effective action to correct the failure in accordance with the
> foregoing.

Exhibit D at Section 12.0.

61.     These express warranties were part of the basis of the bargain between Schuff

Steel and BP, and BP reasonably relied upon the representations Shuff Steel's warranties.

62.     Schuff Steel knew that BP intended to use the structural steel coated with

Pyrocrete supplied by Schuff Steel for BP's Modernization Project.

63.     Schuff Steel breached the express warranties by, among other things, supplying

BP with structural steel that, on information and belief, had Pyrocrete that  was not prepared

and/or applied to the structural steel in accordance with the requirements of the Schuff Steel

Purchase Order.

64.     Schuff Steel received sufficient and timely notice of its breach of express

warranties as alleged herein.

65.     Despite such notice and demands for repair and/or reimbursement, and despite

Schuff Steel's knowledge of defects in the application or manufacture of the Pyrocrete, Schuff

Steel failed and refused to honor its warranty obligations.

66.     Schuff Steel's breaches of the express warranties caused BP damages, including,

without limitation, the costs that BP has incurred and will incur to investigate and remedy the

defective conditions and property damage that now exist at BP's Modernization Project.

67.     BP seeks a judgment from and against Schuff Steel for all damages BP has

suffered and continues to suffer in an amount in excess of the minimal jurisdictional limits of this

Court, plus pre-judgment interest, post-judgment interest, and all costs of court as allowed by law.

## COUNT 5
### Breach of Express Warranty – Alfred Miller

68.     BP re-alleges and incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

69.     On information and belief, on or about July 30, 2010, Trinity Steel issued blanket purchase order No. TSF-FW1-AMC to Alfred Miller to provide labor and materials to install shop-applied Pyrocrete on structural steel for BP's Modernization Project. A copy of the blanket purchase order with attachments (the "Alfred Miller Purchase Order") is attached hereto as Exhibit F.

70.     On information and belief, Alfred Miller entered into a contract or contracts with Carboline for the Pyrocrete that Alfred Miller applied to the structural steel for BP's Modernization Project.

71.     The contract between Trinity Steel and Alfred Miller includes an express warranty that runs from Alfred Miller to BP. The Alfred Miller Purchase Order references and incorporates the terms and conditions of the AIA A401 Subcontract Form Agreement Between Contractor and Subcontractor. Alfred Miller Purchase Order at pages 3, 4 and 6. A true and correct copy of the AIA A401 form is attached as Exhibit G. That form document includes a warranty in Section 4.5 which states, in relevant part, as follows:

> **§ 4.5 WARRANTY**
>
> The Subcontractor warrants to the Owner, Architect, and Contractor that materials and equipment furnished under this Subcontract will be of good quality and new unless the Subcontract Documents require or permit otherwise. The Subcontractor further warrants that the Work will conform to the requirements of the Subcontract Documents and will be free from defects, except for

> those inherent in the quality of the Work the Subcontract
> Documents require or permit. Work, materials, or equipment not
> conforming to these requirements may be considered defective.
> The Subcontractor's warranty excludes remedy for damage or
> defect caused by abuse, alterations to the Work not executed by the
> Subcontractor, improper or insufficient maintenance, improper
> operation, or normal wear and tear under normal usage. If required
> by the Architect and Contractor, the Subcontractor shall furnish
> satisfactory evidence as to the kind and quality of materials and
> equipment.

72.    Alfred Miller breached the express warranties by, among other things, supplying

BP with Pyrocrete that was not prepared or applied in accordance with the requirements of the

Trinity Steel, Schuff Steel, or Alfred Miller Purchase Orders.

73.    Alfred Miller breached the express warranties by, among other things, supplying

BP with Pyrocrete precast flange caps that were not manufactured in accordance with the

requirements of the Trinity Steel, Schuff Steel, or Alfred Miller Purchase Orders.

74.    Alfred Miller also breached the express warranties by, among other things,

causing one or more of the conditions alleged in Paragraph 25, above, to occur.

75.    Alfred Miller received sufficient and timely notice of its breach of express

warranties as alleged herein.

76.    Despite such notice and demands for repair and/or reimbursement, and despite

Alfred Miller's knowledge of defects in the application or manufacture of the Pyrocrete, Alfred

Miller failed and refused to honor its warranty obligations.

77.    Alfred Miller's breaches of the express warranties caused BP damages, including,

without limitation, the costs that BP has incurred and will incur to investigate and remedy the

defective conditions and property damage that now exist at BP's Modernization Project.

- 16 -

78.     BP seeks a judgment from and against Alfred Miller for all damages BP has suffered and continues to suffer in an amount in excess of the minimal jurisdictional limits of this Court, plus pre-judgment interest, post-judgment interest, and all costs of court as allowed by law.

## COUNT 6
### Common Law Negligence – Alfred Miller

79.     BP realleges and incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

80.     Alfred Miller owed BP a duty to prepare and apply the Pyrocrete to the structural steel in a good and workmanlike manner, in accordance with industry standards and in accordance with the manufacturer's specifications and directions.

81.     At all relevant times, Alfred Miller had superior knowledge about the application of the Pyrocrete product, and the manufacture and installation of the Pyrocrete precast flange caps. It was foreseeable to Alfred Miller that premature degradation of the Pyrocrete would cause property damage and require replacement of the Pyrocrete, and Alfred Miller faced a minimal burden to guard against such defects.

82.     Alfred Miller breached its duty by, on information and belief, failing to prepare and apply the Pyrocrete to the structural steel as required as alleged above and herein.

83.     Alfred Miller breached its duty by, on information and belief, failing to manufacture and install the Pyrocrete precast flange caps as required as alleged above and herein.

84.     Alfred Miller also breached its duty because it is a responsible cause of, among other things, one or more of the conditions alleged in Paragraph 25 above.

- 17 -

85.     Alfred Miller's negligence is a direct and responsible cause of BP's damages that include damage to the Pyrocrete itself as well as physical damage to other property including the structural steel, which is exhibiting damage in the form of rust.

86.     Alfred Miller's negligence is a direct and responsible cause of BP's damages, including without limitation the costs that BP has incurred and will incur to investigate and remedy the defective conditions and property damage that now exist at BP's Modernization Project.

87.     BP seeks a judgment from and against Alfred Miller for all damages BP has suffered and continues to suffer in an amount in excess of the jurisdictional amount, plus pre-judgment interest, post-judgment interest, and all costs of court as allowed by law.

### COUNT 7
### Common Law Negligence – Tecon

88.     BP realleges and incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

89.     Tecon owed BP a duty to prepare and apply the Pyrocrete to the structural steel in a good and workmanlike manner, in accordance with industry standards and in accordance with the manufacturer's specifications and directions.

90.     At all relevant times, Tecon had superior knowledge about the application of the Pyrocrete product. It was foreseeable to Tecon that premature degradation of the Pyrocrete would cause property damage and require replacement of the Pyrocrete, and Tecon faced a minimal burden to guard against such defects.

91.     Tecon breached its duty by, on information and belief, failing to prepare and apply the Pyrocrete to the structural steel as required as alleged above and herein.

92.     Tecon also breached its duty because it is a responsible cause of, among other things, one or more of the conditions alleged in Paragraph 25 above.

93.     Tecon's negligence is a direct and responsible cause of BP's damages that include damage to the Pyrocrete itself as well as physical damage to other property including the structural steel, which is exhibiting damage in the form of rust.

94.     Tecon's negligence is a direct and responsible cause of BP's damages, including without limitation the costs that BP has incurred and will incur to investigate and remedy the defective conditions and property damage that now exist at the Modernization Project.

95.     BP seeks a judgment from and against Tecon for all damages BP has suffered and continues to suffer in an amount in excess of the jurisdictional amount, plus pre-judgment interest, post-judgment interest, and all costs of court as allowed by law.

## COUNT 8
## Breach of Implied Warranty of Merchantability - Carboline

96.     BP realleges and incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

97.     Carboline is a merchant in the sale of Pyrocrete.

98.     At all times relevant hereto, there was a duty imposed by law on Carboline that required the Pyrocrete to be reasonably fit for the ordinary purposes for which such Pyrocrete is used, and that required the Pyrocrete to meet or exceed its specifications.

99.     Notwithstanding the aforementioned duty, at the time of delivery, Carboline breached its implied warranty of merchantability by selling Pyrocrete for use at BP's Modernization Project that was not merchantable and not fit for the ordinary purposes for which such Pyrocrete is used as alleged above and herein.

100.    Carboline received sufficient and timely notice of its breach of the implied warranty of merchantability as alleged herein.  Despite this notice, and Carboline's knowledge of the defects in the Pyrocrete, Carboline failed and refused to honor its implied warranty.

101.    Carboline's breach of its implied warranty of merchantability is a direct and responsible cause of BP's damages, including without limitation the costs that BP has incurred and will incur to investigate and remedy the defective conditions and property damage that now exist at the Modernization Project

102.    BP seeks a judgment from and against Carboline for all damages it has suffered and continues to suffer in excess of the minimal jurisdictional limits of this Court, plus pre-judgment interest, post-judgment interest, and all costs of court as allowed by law.

## COUNT 9
## Common Law Negligence – Carboline

103.    BP realleges and incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

104.    Carboline owed BP a duty to manufacture a Pyrocrete product that was not defective.

105.    At all relevant times, Carboline had superior knowledge about the condition of the Pyrocrete product it distributed for BP's Refinery.  It was foreseeable to Carboline that premature degradation of the Pyrocrete would cause property damage and require replacement of the Pyrocrete, and Carboline faced a minimal burden to guard against such defects.

106.    Carboline breached its duty by, on information and belief, manufacturing a Pyrocrete product that is defective.

107.   The Pyrocrete product is defective because, on information and belief, the product prematurely degrades as alleged above and herein even when it is prepared and applied to structural steel in accordance with Carboline's specifications and instructions.

108.   Carboline's negligence is a direct and responsible cause of BP's damages that include damage to the Pyrocrete itself as well as physical damage to other property including the structural steel, which is exhibiting damage in the form of rust.

109.   Carboline's negligence is a direct and responsible cause of BP's damages, including without limitation the costs that BP has incurred and will incur to investigate and remedy the defective conditions and property damage that now exist at the Modernization Project.

110.   BP seeks a judgment from and against Carboline for all damages BP has suffered and continues to suffer in an amount in excess of the minimal jurisdictional limits of this Court, plus pre-judgment interest, post-judgment interest, and all costs of court as allowed by law.

**WHEREFORE,** BP prays that the Court enter judgment in its favor and respectfully requests that the court:

(a)  enter judgment in favor of BP and against Trinity Steel and Schuff Steel finding that each breached its contract with BP;

(b)  enter judgment in favor of BP and against Trinity Steel, Schuff Steel, and Alfred Miller finding that each breached its express warranties to BP;

(c)  enter judgment in favor of BP and against Alfred Miller, Tecon, and Carboline finding that each was negligent and caused harm to BP's property;

(d)  enter judgment in favor of BP and against Carboline finding that Carboline breached its implied warranty of merchantability to BP;

- 21 -

(e)  award BP money damages in the amount to be proved at trial but in excess of the minimal jurisdictional limits of this Court;

(f)  award BP prejudgment interest;

(g)  award BP costs of suit;

(h)  award BP post-judgment interest; and

(i)  grant such other and further relief as this Court may deem just, equitable, and proper.

Dated:  December 3, 2012                          Respectfully submitted,

                                                 _____
                                                 John D. LaDue (19039-71)
                                                 Erin Linder Hanig (29113-71)
                                                 LADUE CURRAN & KUEHN LLC
                                                 200 First Bank Building
                                                 205 West Jefferson Blvd.
                                                 South Bend, Indiana  46601
                                                 Telephone:  (574) 968-0760
                                                 Facsimile:  (574) 968-0761
                                                 jladue@lck-law.com
                                                 ehanig@lck-law.com


OF COUNSEL

David J. Zott, P.C. (*pro hac vice* pending)
Sarah P. Herlihy
Kristina Alexander
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
david.zott@kirkland.com
sarah.herlihy@kirkland.com
kristina.alexander@kirkland.com