IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| BP PRODUCTS NORTH AMERICA INC., | § § § | |
| Plaintiff, | § § | Civil Action No. 2:12-cv-502 |
| v. | § § | Senior Judge James T. Moody |
| CARBOLINE COMPANY, TRINITY STEEL FABRICATORS, INC., SCHUFF STEEL COMPANY, TECON SERVICES, INC., and ALFRED MILLER CONTRACTING COMPANY | § § § § § § § | |

**DEFENDANTS ALFRED MILLER CONTRACTING COMPANY'S
AND TECON SERVICE, INC.'S CORRECTED BRIEF IN SUPPORT OF THEIR
RULE 12(b)(7) MOTION TO DISMISS OR, ALTERNATIVELY, FOR STAY**

Defendants Alfred Miller Contracting Company ("AMC") and Tecon Services, Inc. ("Tecon") (collectively, "Defendants") file this brief in support of their motion to dismiss pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure or, alternatively, for a stay of this litigation, and would respectfully show the Court as follows.

**INTRODUCTION**

This is the second of two lawsuits concerning the same alleged problems with Pyrocrete® 241 fireproofing installed on structural steel that is now part of a refinery in Whiting, Indiana. AMC and Tecon filed the first lawsuit in Louisiana. That first-filed lawsuit, involves all parties affected by the underlying dispute. By contrast, the present lawsuit omits a crucial non-diverse claimant, BP Corporation North America Inc. ("BP Corporation"), which not only asserted an interest in the very claims alleged here by BP Products North America Inc. ("BP Products"), but also is a party to the contract on which BP Products sues. BP Products cannot join BP Corporation without destroying this Court's diversity jurisdiction. Therefore, this

222513_1.DOC

lawsuit cannot in equity and good conscience proceed in the absence of BP Corporation. Accordingly, this lawsuit should be dismissed. FED. R. CIV. P. 12(b)(7), 19. Alternatively, exceptional circumstances weigh heavily in favor of dismissal or a stay pursuant principles of federal comity and/or under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

## BACKGROUND

The action concerns alleged problems and defects with Pyrocrete® 241 fireproofing installed on structural steel at a refinery in Whiting, Indiana. BP Products alleges that the installed Pyrocrete® 241 fireproofing is degrading prematurely and causing damage to BP Products' property. Cmpl. ¶ 3. BP Products seeks to hold the manufacturer of Pyrocrete® 241—Carboline Company ("Carboline"), as well as AMC and Tecon—two of three entities that installed the Pyrocrete® 241 on steel subsequently erected at the refinery in Whiting, liable in warranty and/or negligence for the resulting damages. Cmpl. ¶¶ 13-15, 69-110. In addition, BP Products seeks to hold the parties that contracted to supply the steel for the refinery—Trinity Steel Fabricators, Inc. ("Trinity") and Schuff Steel Company ("Schuff") liable in contract and warranty. *Id.* at ¶¶ 32-67.

BP Corporation North America Inc.—a separate and distinct entity that is <u>not</u> a party to this litigation—asserts an interest in the very same claims. Specifically, on August 29, 2011, a senior attorney for "BP Legal" sent a demand letter to AMC. The letter, entitled "Re: *BP Corporation North America, Inc. ("BP")* Whiting Refinery Modernization Project – Structural Steel Fireproofing Claim," states:

> As you know, the BP Whiting Refinery Modernization Project (the 'Project') is experiencing quality issues with the fireproofing on the structural steel. Among other things, the fireproofing is discoloring and chalking, certain surface areas have a thin and brittle layer that is breaking and/or peeling off, certain other areas have thicker/deeper weak soft spots that are delaminating and/or weathering

2

> easily, and there are areas that are otherwise breaking, peeling, delaminating and showing premature signs of distress or failure of the fireproofing material. This problem is affecting most, if not all, of the structural steel for the Project. It remains unclear at this time what is causing the problem, but it currently appears to be due to defects in the application of the fireproofing to the structural steel and/or defects in the fireproofing material itself.

Ex. 1, Aug. 29, 2011 letter (emphasis added). The letter continues: "This letter is being sent to provide additional notice about this problem, and also to place your company on notice that BP"—defined in the heading as BP <u>Corporation</u> North America, Inc.—"has or may come to have claims against your company including, without limitation, claims for breach of contract and/or breach of warranty, claims for negligence or other common law claims, claims for delay and/or disruption, and claims for compensatory and consequential damages." *Id.* The letter further suggests that the parties enter into a tolling agreement in order to permit the parties to continue to investigate and discuss the matter. *Id.*

BP Corporation continued to represent to AMC that BP Corporation was the purchaser of the structural steel at issue, and that BP Corporation had claims against AMC and the other defendants in connection with the fireproofing. *See Alfred Miller Contracting Co., et al. v. Carboline Co. Inc., et al.*, No. 2:13-cv-00084-DEW-KK, In the United States District Court for the Western District of Louisiana, Lake Charles Division, Exhibit C to Notice of Removal, Doc. No. 1-7 (Tolling Agreement), p. 1. Indeed, the documents allegedly forming the underlying agreement with Trinity on which BP Products sues, attached as Exhibit C to the Complaint, identify BP Corporation as an entity with whom Trinity contracted.[1] Ex. C to Cmpl., Nov. 8, 2007 Framework Agreement OCC-IPMT-CO-0.0-0108, at pp. 1, 2; *and see* Cmpl. At ¶¶ 34-39 (alleging breach of contract documents including Exhibit C).

---

[1] An October 25, 2010 "Amendment 1 to Master Agreement" states without explanation that the original agreement was with BP Products North America Inc., and (inconsistently) that the original agreement was with BP America Inc. Ex. C to Cmpl.

3

On December 1, 2012, in an attempt to resolve this dispute, AMC and Tecon filed suit in Louisiana state court against all potentially affected parties. *See* Ex. 2, Petition for Damages and Declaratory Judgment (hereinafter, "Louisiana Petition"), No. 2012-004965 F, In the 14th Judicial District Court of the Parish of Calcasieu, State of Louisiana, (filed Dec. 1, 2012) (hereinafter, the "Louisiana Litigation"). AMC and Tecon named both BP Corporation and BP Products, as well as Carboline, Schuff, and Trinity. *Id.* at ¶ 2(a)-(c), (f), (h). In addition, AMC and Tecon named third parties Dynamic Industries, Inc. ("DII"), which assembled some of the fireproofed steel into modules, and Land Coast Insulation, which applied fireproofing to steel at DII's Louisiana premises, as parties in the Louisiana Litigation.[2] *Id.* at ¶¶ 2(i)-(j), 35-39. AMC and Tecon also named Foster Wheeler USA Corporation and Fluor Enterprises, Inc., which issued the purchase orders to Trinity and Schuff for the steel at issue. *Id.* at ¶ 15. Finally, AMC and Tecon named Schuff Steel—Gulf Coast, Inc., the entity that issued purchase orders to AMC. *Id.* at ¶¶ 2(g). AMC and Tecon seek declarations resolving the parties' liability for the problems experienced with the Pyrocrete® 241 at the Whiting Refinery, as well as damages from Carboline under Louisiana law for breaches of warranty and contract, negligent misrepresentations, breach of a continuing duty to disclose, and fraud. *Id.* at ¶¶ 59-103. Thus, all entities potentially affected by the underlying dispute are parties to the Louisiana Litigation, which seeks to resolve the entire dispute.

BP Products filed the present action on December 3, 2012, seeking relief as to a subset of the issues raised in the Louisiana Litigation. Specifically, BP Products alleges that the Pyrocrete® 241 is defective or it was applied improperly. *Id.* at ¶¶ 21-26. It sued Trinity and

---

[2] As set forth below, AMC and Tecon allege in their first-filed action that nonparty Land Coast is responsible for problems with Pyrocrete® 241 fireproofing that it installed, and that DII is also responsible for the damage to BP's property.

4

Schuff in contract and warranty, AMC in warranty and negligence, Tecon in negligence, and Carboline in warranty and negligence. *Id.* at ¶¶ 32-110.

As discussed above, BP Corporation previously asserted rights in these very claims. BP Corporation, however, has its principal place of business is in Texas. *See* Ex. 3, April 8, 2011 Notice of Change of Principal Office Address. Defendant Tecon is a Texas corporation with a principal place of business in Texas; Trinity's principal place of business is also in Texas. *See* Cmpl. at ¶¶ 8, 11. Accordingly, BP Corporation could not file suit in this Court because its presence would destroy diversity jurisdiction.

On January 11, 2013, Carboline removed the underlying Louisiana proceedings to federal court, alleging diversity jurisdiction. Because BP Corporation, Tecon, and Trinity—all parties to the Louisiana action—are not completely diverse, AMC and Tecon anticipate a remand of the Louisiana action for lack of federal subject matter jurisdiction.

## ARGUMENT AND AUTHORITIES

### I.     RULE 12(b)(7) MOTION TO DISMISS.

The Federal Rules of Civil Procedure require joinder where feasible of "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction," if "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FED. R. CIV. P 19(a)(1).

Where, as here, joinder of such a party would deprive the Court of subject-matter jurisdiction, "the court must determine whether, in equity and good conscience, the action should

5

proceed among the existing parties or should be dismissed." FED. R. CIV. P 19(b). The court should take into consideration "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties," whether such a judgment would be adequate, the extent to which any prejudice could be lessened or avoided, and whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder. FED. R. CIV. P 19(b).

Notably, "Rule 19, by its plain language, does not require the absent party to actually possess an interest; it only requires the movant to show that the absent party *claims an interest* relating to the subject of the action." *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 998 (10th Cir. 2001) (quoting *Davis v. United States*, 192 F.3d 951, 958 (10th Cir. 1999) (internal quotation marks omitted; emphases in original)). So long as that interest is neither "fabricated nor frivolous," it is not excluded from consideration under Rule 19(a). *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1289 (10th Cir.2003), cert. denied, 542 U.S. 937, 124 S.Ct. 2907, 159 L.Ed.2d 812 (2004); *see also Keweenaw Bay Indian Community v. State of Michigan*, 11 F.3d 1341, 1347 (6th Cir. 1993) (court affirmed Rule 19 dismissal where claims of absent Indian bands were not "patently frivolous"); *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992) (affirming conclusion that tribes were necessary parties, where their claims were not "patently frivolous").

### A. BP Corporation Is the Paradigm of a "Person[] Required to Be Joined If Feasible."

BP Corporation affirmatively asserted its interest in the very claims presently at issue. BP Corporation not only notified defendants of its interest, it also proceeded to take steps with AMC, Tecon and others to protect that interest pending investigation. BP Corporation's interest in the same claims asserted by BP Products leaves AMC and Tecon subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.

In fact, BP Corporation is identified as a contracting party in the very documents on which BP Products purports to sue. Ex. C to Cmpl., Framework Agreement, at pp. 1, 2; *and see* Cmpl. at ¶¶ 34-39. "A contracting party is the paradigm of an indispensable party." *See Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 484 (7th Cir. 2001); *see also Acton Co., Inc. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76, 78-79 (1st Cir. 1982) (parent corporation that was a party to underlying letter of intent and purchase agreement, and that was substantially involved in negotiations for purchase, was indispensable party in action filed by subsidiary seeking declaration that no enforceable agreement existed); *Expeditors Int'l of Washington, Inc. v. Expeditors (Japan), Ltd.*, 224 F.R.D. 661, 664-68 (W.D. Wash. 2004) (subsidiary that was a signatory to asset purchase agreement was an indispensable party to parent corporation's breach of contract lawsuit, even though parent corporation was also a real party in interest by virtue of parent corporation's signature on letter of intent; subsidiary might have an independent interest in enforcing asset purchase agreement and would not be prevented from bringing another lawsuit against defendants—"precisely what Fed.R.Civ.P. 19 was intended to prevent"); *Onyx Waste Servs., Inc. v. Mogan*, 203 F.Supp.2d 777, 786 (E.D. Mich. 2002) ("'If the absent party has a legally protected interest in the subject matter of the action—i.e., he is a party to a contract at issue—he falls squarely within the terms of [Rule 19(a)(1)(B)].'") (*quoting Burger King Corp. v. Am. Nat'l Bank and Trust Co. of Chicago*, 119 F.R.D. 672, 675 (N.D. Ill. 1988)); *Boise Cascade Corp. v. Wheeler*, 419 F. Supp. 98, 100-03 (D.C.N.Y. 1976), aff'd without opinion, 556 F.2d 554 (2d Cir. 1977) (contractor, as party that entered into contract at issue, was an indispensable party to action filed by sole shareholder of contractor against architects; although sole shareholder might have a right to assert its own claims for relief, the contractor "also appears to have rights in this matter, rights which seem to be so inextricably intertwined with those asserted by [the

sole shareholder] that any disposition on the merits in [the contractor's] absence may impair [the contractor's] ability to protect its own interests and/or subject the Architect to multiple liability"); *cf. Tillman v. Apostolopoulos*, No. 10-cv-12253, 2010 WL 3584294, *2 (E.D. Mich. Sept. 9, 2010) (parties to agreements, which had real interest relating to the contracts at issue, were necessary and indispensable parties to breach of contract action); *see generally* 7 FEDERAL PRACTICE AND PROCEDURE § 1613 (3d ed. 2001) (while some courts have held that joint obligors under a contract are necessary but not indispensable parties, joint obligees usually have been held to be indispensable parties and their nonjoinder has led to a dismissal of the action).

As a result, BP Corporation must be joined if feasible. FED. R. CIV. P 19(a).

**B.  BP Corporation Cannot Be Joined Because Its Presence Would Destroy Diversity Jurisdiction.**

A federal district court has "original jurisdiction of all civil actions where the matter in controversy ... is between ... citizens of different States." 28 U.S.C. § 1332(a). This statutory grant requires complete diversity between the plaintiffs and defendants in an action. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Fidelity & Deposit Co. of Maryland v. City of Sheboygan Falls*, 713 F.2d 1261, 1264 (7th Cir. 1983).

When determining whether federal jurisdiction exists, courts have an independent duty to look beyond the pleadings and to arrange the parties according to their true sides in the dispute. *See City of Indianapolis v. Chase National Bank*, 314 U.S. 63, 69 (1941). "The formal designation of a party in the complaint as plaintiff or defendant is not controlling; 'the court will look beyond the pleadings, and arrange the parties according to their sides in the dispute.'" *Fidelity & Deposit Co. of Maryland v. City of Sheboygan Falls*, 713 F.2d 1261, 1264 (7th Cir. 1983) (quoting *City of Dawson v. Columbia Avenue Saving Fund, Safe Deposit, Title, & Trust Co.*, 197 U.S. 178, 180 (1905)).

Likewise, when a party is required to be joined under Rule 19 of the Federal Rules of Civil Procedure, diversity jurisdiction depends not on whether the party is an "involuntary plaintiff" under that Rule, but on whether the party is properly aligned in the dispute. *See Murray v. Mississippi Farm Bureau Cas. Ins. Co.*, 251 F.R.D. 361, 364 (E.D. Wis. 2008) (dispositive question "is whether diversity exists, not whether the technicalities of Rule 19(a) have been followed"). "The propriety of alignment is a matter not to be determined by mechanical rules, but by pragmatic review of the principal purpose of the action and the controlling matter in dispute." *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 149 (7th Cir. 1981).

BP Corporation is a resident of Texas, where its principal place of business is located. *See* Ex. 3, April 8, 2011 Notice of Change of Principal Office Address (BP Corporation's principal place of business is in Texas); 28 U.S.C. § 1332(c)(1) (for purposes of diversity, a corporation is deemed a citizen of the state where it is incorporated and of the state where it has its principal place of business). Defendant Tecon is also a Texas corporation with a principal place of business in Texas, and Trinity's principal place of business is in Texas. *See* Cmpl. at ¶¶ 8, 11. As a result, both corporations are Texas residents for purposes of diversity. 28 U.S.C. § 1332(c)(1).

Furthermore, BP Corporation is properly aligned with BP Products on its claims against Tecon and Trinity. BP Corporation has asserted an interest against the very Texas entities—Tecon and Trinity—that BP Products alleges are liable for the damages relating to the Whiting refinery. In fact, BP Corporation is a party to the very same contract on which BP Products sues Trinity. BP Corporation thus has an interest in Tecon and Trinity being held liable for the same conduct and the damages alleged by BP Products. Joining BP Corporation as a plaintiff in this

action would destroy diversity. *See* 28 U.S.C. § 1332; *Acton Co.*, 668 F.2d at 79 (noting it was undisputed that party to contract on which plaintiff sued was aligned with plaintiff for purposes of diversity jurisdiction); *Onyx Waste Services*, 203 F. Supp. 2d at 786-87 (dismissal warranted where indispensable Michigan corporation had an interest in the same agreement against the same Michigan defendant as the Wisconsin plaintiff, and plaintiff had indicated non-diverse Michigan entity might enforce contractual rights against Michigan defendant).

### C. This Litigation Cannot In Equity and Good Conscience Proceed Without BP Corporation.

Permitting BP Products to proceed against AMC, Tecon, and the other defendants without BP Corporation would preclude the Court from according complete relief among the existing parties. A judgment rendered in the absence of BP Corporation would severely prejudice the existing parties, who could face the risk of multiple or inconsistent obligations to BP Corporation and BP Products. FED. R. CIV. P. 19(b)(1). Such a judgment would be inadequate because it would not finally resolve AMC's and Tecon's liability for the problems with Pyrocrete® 241 at the Whiting refinery. FED. R. CIV. P. 19(b)(3). In contrast, BP Products will have an adequate remedy if this action is dismissed because it is a party to the pending Louisiana Litigation, which involves all potentially affected parties and the same issues raised in the pending action. FED. R. CIV. P. 19(b)(4).

For the foregoing reasons, this action cannot proceed without BP Corporation in equity and good conscience, and it should be dismissed in its entirety pursuant to Rule 12(b)(7) and 19(b) of the Federal Rules of Civil Procedure. *See Evergreen Int'l Aviation, Inc. v. Banc of America Securities, LLC*, 2004 WL 1717627, *4 (D. Or. 2004) (holding that corporate subsidiaries that were co-obligees with parent corporation under contract were indispensable parties, and dismissing rather than staying action).

10

**II.     ALTERNATIVE MOTION TO DISMISS OR STAY SECOND-FILED ACTION.**

Alternatively, the present action should be dismissed or stayed in favor of the Louisiana proceedings, which will fully resolve the entire controversy between all the parties including BP Corporation.  First, although Carboline's removal of the Louisiana Litigation is patently improper because as BP Corporation, Tecon, and Trinity are all parties to that litigation and there is not complete diversity of jurisdiction among the parties, as discussed above, *see* Ex. 2, Louisiana Petition, at ¶¶ 1(b), 2(b), 2(f), assuming, *arguendo*, that the Louisiana litigation could properly proceed in federal court, the present action should be stayed or dismissed out of principles of comity.

Where two actions are simultaneously proceeding in multiple federal courts, the first-filed action should generally be allowed to proceed.  *See*, *e.g.*, *Boatmen's First Nat'l Bank of Kansas City v. Kansas Public Employees Retirement Sys.*, 57 F.3d 638, 640 n.3 (8th Cir. 1995) ("The first-filed rule provides that, in a case of concurrent jurisdiction, 'the first court in which jurisdiction attaches has priority to consider the case.'") (quoting *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir.1985)); *Adams v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second). Where a state action is subsequently removed to federal court, for the purposes of the first-to-file rule, "the state court filing date is the relevant benchmark." *Manufacturers Hanover Trust Co. v. Palmer Corp.*, 798 F.Supp. 161, 166 (S.D.N.Y.1992) (collecting cases); *see also* 14A Wright, Miller & Cooper, Federal Practice and Procedure § 3738 at 556–57 (1985) ("After removal, a federal court acquires full and exclusive jurisdiction over the litigation. The removed case proceeds according to the Federal Rules of Civil Procedure and is treated as though it had been commenced originally in the federal court.") (footnotes omitted).  The Louisiana Litigation was

11

filed on December 1, 2012—before this lawsuit. Furthermore, as discussed below, the circumstances of the present case weigh heavily in favor of dismissing or staying the pending lawsuit.

Alternatively, and insofar as AMC and Tecon anticipate remand of the Louisiana Litigation, an order of dismissal or stay in the present action is proper because exceptional circumstances warrant dismissing or staying this action in favor of the Louisiana Litigation. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *Colorado River* abstention permits federal courts to defer to a "concurrent state proceeding" in "exceptional circumstances" as a matter of "wise judicial administration." 424 U.S. at 818.

To determine whether a stay is appropriate, a court must first consider "whether the concurrent state and federal actions are actually parallel." *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004) (quotation omitted). Two suits are parallel for *Colorado River* purposes when "substantially the same parties are contemporaneously litigating substantially the same issues." *Tyrer v. City of South Beloit*, 456 F.3d 744, 752 (7th Cir.2006) (internal quotation omitted). Precisely formal symmetry is unnecessary. *Id*. The central question is whether there is "a substantial likelihood that state litigation will dispose of all claims presented in the federal case." *Lumen Constr., Inc. v. Brant Constr. Co.*, 78 F.2d 691, 695 (7th Cir. 1985).

Once it is established that the suits are parallel, the court must consider a number of non-exclusive factors that might demonstrate the existence of "exceptional circumstances." *Clark*, 376 F.3d at 685. These factors are: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal

12

plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Id.*

These factors are not meant to be a "mechanical checklist," but require careful balancing by the federal district court. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case," but in any case, the evaluation must be made "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* A district court's ruling on a motion to stay is reviewed for an abuse of discretion. *Clark*, 376 F.3d at 685.

### A. The Federal Lawsuit Is Parallel to the Louisiana Litigation.

The present action involves substantially the same parties and substantially the same issues as the Louisiana Litigation. All of the parties to the present action are also parties to the Louisiana Litigation. *Compare* Cmpl. ¶¶ 7-12 (BP Products named Trinity, Schuff, AMC, Tecon, and Carboline as defendants); *with* Ex. 2, Louisiana Petition, ¶¶ 1-2 (each of the foregoing parties named in Louisiana Litigation).

Moreover, the Louisiana Litigation involves the precise set of operative facts alleged in this case. Both cases ultimately address the question of liability for failures and defects in Pyrocrete® 241 fireproofing applied to structural steel ultimately erected at the Whiting refinery. *Compare* Cmpl. ¶¶ 21-24; *with* Ex. 2, Louisiana Petition, ¶¶ 40, 42, 44-46. Both cases seek to resolve allegations that these problems were caused by defects in Carboline's Pyrocrete® 241 product and/or by the improper installation of Pyrocrete® 241 by AMC and Tecon, and that Trinity, Schuff, AMC, Tecon, and/or Carboline are liable for the damages. *Compare* Cmpl. ¶¶ 21-24; *with* Ex. 2, Louisiana Petition, ¶¶ 23, 46-49. Both cases address Carboline's misrepresentations about its Pyrocrete® 241 product (*compare* Cmpl. ¶¶ 16-21; *with* Ex. 2,

Louisiana Petition, ¶¶ 11, 22, 32), and BP's subsequent selection of Pyrocrete® 241 for fireproofing at the Whiting refinery (*compare* Cmpl. ¶ 20; *with* Ex. 2, Louisiana Petition, ¶¶ 16-17, 27-28). Both cases concern the same sets of contractual relationships—namely, BP's agreements with Trinity and Schuff to supply the structural steel (*compare* Cmpl. ¶ 13; *with* Ex. 2, Louisiana Petition, ¶ 15), and Trinity's and Schuff's subsequent agreements with AMC and Tecon for the installation of Pyrocrete® 241 fireproofing (*compare* Cmpl. ¶ 14; *with* Ex. 2, Louisiana Petition, ¶¶ 14, 17-19, 26). Both cases allege that AMC and Tecon purchased Pyrocrete® 241 from Carboline, that AMC and Tecon installed the Pyrocrete® 241 on structural steel that ultimately was sent to BP for installation at the Whiting refinery. *Compare* Cmpl. ¶ 15; *with* Ex. 2, Louisiana Petition, ¶¶ 18-19, 24-25, 29-30, 34.

Although AMC and Tecon are the petitioners in the Louisiana Litigation and BP Products is a defendant, the posture of the parties is immaterial. *See Calvert Fire Ins. Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228, 1229 n.1 (7th Cir. 1979) ("Here the parties and issues are identical in the state and federal suits, although the posture of the parties is reversed, so that the defendant in the state suit has become the plaintiff in the federal suit."); *Petit v. Washington Mut. Bank, F.A.*, No. 12 C 318, 2012 WL 3437287 (N.D. Ill. Aug. 14, 2012) ("Likewise, although Chase is the plaintiff in the state foreclosure proceeding, the reversed posture of the parties between the two cases is immaterial."). The issues raised in this case are substantially the same as the issues raised in the Louisiana Litigation. The actions are therefore parallel.

    **B.**    **Exceptional Circumstances, Including the Impossibility of Joining BP Corporation North America, Inc., Warrant and Necessitate A Stay.**

The present litigation presents precisely the type of exceptional circumstances in which a stay is clearly not only warranted but necessary.

14

**1.      BP Corporation's Assertion of Rights in The Claims Filed Herein Precludes A Full and Fair Resolution Of Those Claims In BP Corporation's Absence.**

BP Products filed this federal lawsuit alleging claims to which another separate and distinct BP entity—BP Corporation—also asserts rights. In fact, BP Products seeks to recover on a contract that identifies BP Corporation as a contracting party. Ex. C to Cmpl. BP Corporation is not a party to this litigation, it could not have filed its claims in this Court, and its presence in this action would destroy diversity jurisdiction.

The action cannot, however, be fully or fairly resolved in BP Corporation's absence, nor can it be resolved without risking substantial prejudice to the defendants. The importance of BP Corporation—and the potential prejudice to AMC and Tecon—cannot be understated. "An action must be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a)(1). BP Corporation's assertion of rights in the claims brought by BP Products raises significant questions as to who is the real party in interest on these claims. *See F. & H.R. Farman–Farmaian Consulting Eng'rs Firm v. Harza Eng'g Co.*, 882 F.2d 281, 284 (7th Cir. 1989) (when evaluating diversity, courts consider the citizenship of all named parties in addition to that of unnamed indispensable parties and real parties in interest); *Soberay Machine & Equipment Co. v MRF Ltd., Inc.*, 181 F.3d 759, 769 (6th Cir. 1999) (parties were prejudiced by absence of real party in interest); *McDonald v. South Land Co.*, 860 F.2d 1079 (6th Cir. 1988) (finding that where the nondiverse party was named as the seller and personally signed the contracts in question, the nondiverse party was the real party interest and was thus indispensable under Rule 19(b)); *Travelers Indemn. Co. v. Houshold Int'l, Inc.*, 775 F. Supp. 518, 526 (D. Conn. 1991) (a prior lawsuit by subsidiary of plaintiff insurance corporation showed that before filing suit it was the plaintiff corporation's position had been that the subsidiary issued the insurance policy, and thus the subsidiary was the proper party to bring suit).

At a minimum, as discussed above, BP Corporation is a "person[s] required to be joined if feasible." FED. R. CIV. P. 19(a). Permitting BP Products to proceed against AMC, Tecon, and the other defendants without BP Corporation would preclude the Court from according complete relief among the existing parties. Furthermore, such a course would leave AMC, Tecon, and the other defendants subject to a substantial risk of incurring multiple or inconsistent obligations.

> 2. **The Parties' Rights Can Be Adequately Protected In the Comprehensive State Court Action, Weighing Heavily In Favor of a Stay.**

In contrast to the potential for severe prejudice in the instant action as a result of BP Corporation's absence, all parties—including BP Corporation—are parties to the pending Louisiana Litigation, and complete relief can be adequately afforded as among all parties in that single and more comprehensive proceeding. The state court action will fully resolve the question of liability as between all potentially responsible parties—including not only BP Corporation but also DII and Land Coast. *Colorado River*, 424 U.S. at 817 (doctrine allows "federal courts in some exceptional cases to defer to a concurrent state-court case as a matter of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'") (quotation omitted). These exceptional circumstances weigh heavily in favor of a stay. *See, e.g.*, *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) (desirability of avoiding piecemeal litigation weighed in favor of a stay, since the parallel nature of the suits made clear that "there would be a grand waste of efforts by both the courts and parties in litigating the same issues regarding the same [policies] in two forums at once.") (internal quotation omitted); *Pence v. Lightning Rod Mut. Ins. Co.*, 203 F. Supp. 2d 1025, 1030-31 (S.D. Ind. 2002) (abstaining under *Colorado River*, where presence of all pertinent parties and all issues in state court action "is likely to result in a more complete and comprehensive consideration" of the claims); *Sterling Fed. Bank, F.S.B. v. Countrywide*

16

*Financial Corp.*, 2012 WL 2368821, *15 (N.D. Ill. June 21, 2012) (avoiding piecemeal litigation weighed "heavily" in favor of abstention, where state court proceeding provided a single mechanism for court to consider all interested parties' objections to settlement agreement); *Foster-el Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67, 73 (D.D.C. 2001) (comprehensive nature of state court proceedings favored abstention); *Saatchi & Saatchi Business Communications, Inc. v. Just For Feet, Inc.*, 64 F. Supp. 2d 207, 211 (W.D.N.Y. 1999) (state court action was more comprehensive in that plaintiff could pursue all of its claims in the state court action).

### 3. Other Factors Either Weigh In Favor of a Stay Or Are Neutral.

The remaining factors either weigh in favor of a stay, or are neutral. The Louisiana Litigation was filed first. Both actions ultimately concern the question of whether Pyrocrete® 241 that was purchased and installed by AMC in Louisiana and by Tecon in Texas, and assembled and subjected to additional fireproofing by DII and Land Coast in Louisiana, was defective, improperly applied, or damaged in Louisiana after AMC's and/or Tecon's fireproofing. Louisiana is an inherently more convenient forum for resolving these issues. The underlying claims against AMC in this case are governed by the laws of Louisiana, where AMC contracted with Schuff Steel—Gulf Coast Inc. and Trinity, where AMC purchased Pyrocrete® 241, where AMC did the fireproofing, and where DII and Land Coast assembled the fireproofed steel into modules and performed additional fireproofing. *Lumen Constr.*, 780 F.2d at 696. In contrast, none of the claims are governed by federal law. *See Pence v. Lightning Rod Mut. Ins. Co.*, 203 F. Supp. 2d 1025, 1030-31 (S.D. Ind. 2002) Because the parties to the Louisiana proceedings are not completely diverse, removal of that litigation is not available and was improper. Moreover, the Louisiana forum is more than adequate to protect BP Products' rights. *See Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 697 (7th Cir. 1985) (declining to presume that state courts would not discharge obligation to follow the law faithfully).

Although a plaintiff is generally are entitled to file a diversity action in federal court where diversity jurisdiction exists, *see AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 279-80 (7th Cir. 2003), the present case is unique in that two related BP entities—one diverse and one not diverse—have asserted rights in the very same claims.  BP Corporation—a non-diverse entity—made demands and asserted rights in the underlying claims, going so far as to take steps to preserve its rights in the litigation pending investigation.  In the subsequent federal diversity filing, however, BP Products alone is named as the plaintiff.  Under the circumstances, any right BP Products might claim to file a diversity action in federal court—a forum that would not have been available had BP Corporation been named as a plaintiff—is substantially outweighed by the risk of significant prejudice to the defendants were this case to proceed without BP Corporation, and by the inherent waste of resources attendant with litigation concerning one narrow aspect of a broader controversy being litigated in comprehensive proceedings elsewhere.

## CONCLUSION

For the foregoing reasons, defendants AMC and Tecon respectfully request that this Court dismiss this action pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure.  In the alternative, this court should dismiss or stay this action in favor of the pending Louisiana litigation.

Dated:  January 25, 2013

                                              Respectfully submitted,

                                              s/Arthur J. Howe
                                              One of the Attorneys for Tecon Services, Inc. and
                                              Alfred Miller Contracting Company

Arthur J. Howe (howe@sw.com)
SCHOPF & WEISS LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois 60606
(312) 701-9300

## **CERTIFICATE OF SERVICE**

I, Arthur J. Howe, hereby certifies that a true and correct copy of the attached **Defendants Alfred Miller Contracting Company's and Tecon Service, Inc.'s Corrected Brief in Support of Their Rule 12(b)(7) Motion to Dismiss or, Alternatively, For Stay** was served on the 25th day of January, 2013 electronically via CM/ECF upon all registered users for this case, and via U.S. Mail, postage prepaid, to the following:

Carboline Company          Carboline Company
2150 Schuetz Road          c/o Prentice-Hall Corp. System
St. Louis, MO 63146        221 Bolivar Street
                           Jefferson City, MO 65101

s/Arthur J. Howe