# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| BP PRODUCTS NORTH AMERICA INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: 2:12 CV 502-JTM-PRC |
| CARBOLINE COMPANY, TRINITY STEEL FABRICATORS, INC., SCHUFF STEEL COMPANY, TECON STEEL SERVICES, INC., and ALFRED MILLER CONTRACTING COMPANY | ) ) ) ) ) ) | |
| Defendants. | ) | |

## BP PRODUCTS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

David J. Zott, P.C. (admitted *pro hac vice*)
Sarah P. Herlihy (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

John D. LaDue (19039-71)
Erin Linder Hanig (29113-71)
LADUE CURRAN & KUEHN LLC
205 West Jefferson Blvd.
South Bend, Indiana 46601
Telephone: (574) 968-0760
Facsimile: (574) 968-0761

*Attorneys for BP Products North America Inc.*

February 15, 2013

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT .......................................................................................................7

I. BPCNA IS NOT NECESSARY OR INDISPENSIBLE TO THIS LITIGATION. ............7

    A. BPCNA Is Not A Necessary Party Under Rule 19(a)(1)........................................8

        1. BPCNA Has Disclaimed Any Purported Interest In The Degrading Pyrocrete. ........................................................................8

        2. BPCNA Does Not Have Rights Under The Contracts At Issue. ...............10

    B. This Case Can Proceed In Equity And Good Conscience Because BPCNA Is Not An Indispensable Party. ..............................................................12

        1. Defendants Will Not Be Prejudiced In BPCNA's Absence. .....................13

        2. A Judgment Here Would Completely Resolve Defendants' Potential Liability For Issues With The Pyrocrete.....................................14

        3. Whether BP Products Has An Adequate Alternative Remedy Is No Reason To Dismiss The Indiana Action. ....................................................15

        4. This Court Can Fashion Relief That Would Avoid Any Prejudice ..........16

II. DEFENDANTS HAVE NOT—AND CANNOT—PROVE THE EXCEPTIONAL CIRCUMSTANCES REQUIRED FOR *COLORADO RIVER* ABSTENTION. .......................................................................................17

    A. This Federal Case Is Not Parallel To The Action Pending In Louisiana...............17

    B. Exceptional Circumstances Do Not Exist To Justify Abstaining In Favor Of The Louisiana Action. .......................................................................19

        1. This Case Is The First Properly Filed Action. ..........................................19

        2. The Louisiana Case Is In Its Procedural Infancy......................................20

        3. Allowing This Action To Proceed Will Not Result In Piecemeal Litigation....................................................................................................21

        4. Louisiana Is Not "Inherently" More Convenient......................................23

i

5.      The Lack Of A Federal Question Does Not Favor Abstention..................24

6.      The State Court Case Is Subject To Removal............................................25

CONCLUSION..........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAR Int'l, Inc. v. Nimelias Enters. S.A.*,
250 F.3d 510 (7th Cir. 2001) ................................................................. 18

*Adkins v. VIM Recycling, Inc.*,
644 F.3d 483 (7th Cir. 2011) ................................................................. 18

*Allen v. McCurry*,
449 U.S. 90 (1980) ................................................................................. 14

*Am. Family Mut. Ins. Co. v. Mill Installation & Constr., Inc.*,
2011 WL 4373347 (S.D. Ind. Sept. 19, 2011) ........................................ 25

*Anchor Glass Container Corp. v. Buschmeier*,
426 F.3d 872 (7th Cir. 2005) ................................................................. 13

*Ariens Co. v. WEC Co.*,
2006 WL 273510 (E.D. Wis. Feb. 1, 2006) ........................................... 11

*Askew v. Sheriff of Cook County*,
568 F.3d 632 (7th Cir. 2009) ............................................................. 7, 15

*AXA Corp. Solutions v. Underwriters Reins. Corp.*,
347 F.3d 272 (7th Cir. 2003) ................................................................. 25

*Bonnet v. Trs. of Schs. of 41 N., Range 12 E. of the Third Principal Meridian, Cook County, Ill.*,
563 F.2d 831 (7th Cir. 1977) ................................................................. 15

*Broker's Trust Clearing Corp. v. Noe*,
1988 WL 93839 (N.D. Ill. Sept. 1, 1988) ............................................... 22

*Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*,
962 F.2d 698 (7th Cir. 1992) ................................................................. 19

*Cent. States, Se. & Sw. Area Pension Fund v. Safeco Ins. Co.*,
717 F. Supp. 572 (N.D. Ill. 1989) .......................................................... 10

*Clark v. Lacy*,
376 F.3d 682 (7th Cir. 2004) ................................................................. 17

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976) ........................................................................ passim

*Davis Cos. v. Emerald Casino, Inc.*,
268 F.3d 477 (7th Cir. 2001) ................................................... 7, 8, 10, 11

*Decatur Ventures, LLC v. Stapleton Ventures, Inc.*,
2006 WL 3305122 (S.D. Ind. Aug. 16, 2006) ......................................... 8

*ECHO, Inc. v. Whitson Co.*,
52 F.3d 702 (7th Cir. 1995) ................................................................... 11

*Fifth Third Bank v. Double Tree Lake Estates, LLC*,
  2012 WL 589432 (N.D. Ind. Feb. 21, 2012) ...................................................................... 17

*Finn v. Centier Bank*,
  2011 WL 2893645 (N.D. Ind. July 15, 2011) .............................................................. 19, 24

*Geiger v. Ryan's Family Steak Houses, Inc.*,
  134 F. Supp. 2d 985 (S.D. Ind. 2001) .............................................................................. 12

*Gibson v. Neighborhood Health Clinics, Inc.*,
  121 F.3d 1126 (7th Cir. 1997) .......................................................................................... 12

*Grant Cnty. Dep. Bank v. McCampbell*,
  194 F.2d 469 (6th Cir. 1952) .......................................................................................... 8, 9

*Grubb & Ellis Co. v. Huntington Hoffman, LLC*,
  2010 WL 4962846 (N.D. Ill. Dec. 1, 2010) ................................................................... 9, 10

*Hermitage Ins. Co. v. Salts*,
  698 N.E.2d 856 (Ind. Ct. App. 1998) ................................................................................ 14

*Highway J Citizens Group v. U.S. Dep't of Transp.*,
  456 F.3d 734 (7th Cir. 2006) ............................................................................................ 14

*In re Colonial Mortg. Bankers Corp.*,
  324 F.3d 12 (1st Cir. 2003) ......................................................................................... 14, 15

*Ind. Bell Tel. Co. v. Commc'ns Venture Corp.*,
  2011 WL 1135912 (S.D. Ind. Mar. 25, 2011) .................................................................. 25

*J.I.K. Realty Co., Inc. v. Steward*,
  1989 WL 165114 (N.D. Ill. Dec. 28, 1989) ...................................................................... 25

*Lumen Const., Inc. v. Brant Const. Co.*,
  780 F.2d 691 (7th Cir. 1985) ............................................................................................ 17

*Mars, Inc. v. Nippon Conlux Kabushiki–Kaisha*,
  855 F. Supp. 673 (D. Del. 1994) ...................................................................................... 14

*McCain v. Spaulding*,
  2010 WL 3522986 (N.D. Ind. Sept. 2, 2010) ................................................................... 14

*Midwest Dental Prods. Corp. v. Kinetic Instruments, Inc.*,
  1990 WL 19973 (N.D. Ill. Feb. 23, 1990) ................................................................... 24, 25

*Miller Brewing Co. v. ACE U.S. Holdings, Inc.*,
  391 F. Supp. 2d 735 (E.D. Wis. 2005) ........................................................................ 24, 25

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ............................................................................................................. 20

*Nomanbhoy v. Boxwalla*,
  2013 WL 329038 (N.D. Ill. Jan. 29, 2013) ................................................................. 11, 12

*Pasco Int'l (London) Ltd. v. Stenograph Corp.*,
  637 F.2d 496 (7th Cir. 1980) ....................................................................................... 15, 16

*Posnet Servs., LLC v. Cunningham,*
  2006 WL 123774 (N.D. Ill. Jan. 11, 2006) ...................................................... 20, 21

*Prop. & Cas. Ins. Ltd. v. Cent. Nat. Ins. Co. of Omaha,*
  936 F.2d 319 (7th Cir. 1991)............................................................................ 17

*Quantlab Fin., LLC, Quantlab Techs. Ltd. (BVI) v. Tower Research Capital, LLC,*
  715 F. Supp. 2d 542 (S.D.N.Y. 2010) ................................................................ 11

*Riley v. Walgreen Co.,*
  233 F.R.D. 496 (S.D. Tex. 2005) ....................................................................... 21

*Romag Fasteners, Inc. v. Bauer,*
  2011 WL 5513380 (S.D.N.Y. Nov. 9, 2011) ............................................... 8, 9, 14

*Rosser v. Chrysler Corp.,*
  864 F.2d 1299 (7th Cir. 1988).......................................................................... 17

*Sampson v. Yellow Cab Co.,*
  2000 WL 33673505 (7th Cir. Apr. 26, 2000)...................................................... 13

*Scion 2040 Managing Member LLC v. EBREF Holding Co., LLC,*
  2010 WL 4923064 (E.D. Wis. Nov. 29, 2010) .................................................... 25

*Tempco Electric Heater Corp. v. Omega Eng'g, Inc.,*
  819 F.2d 746 (7th Cir. 1987)............................................................................ 20

*TruServ Corp. v. Flegles, Inc.,*
  419 F.3d 584 (7th Cir. 2005).............................................................. 17, 18, 25

*U.S. ex rel. Hall v. Tribal Develop. Corp.,*
  100 F.3d 476 (7th Cir. 1996)............................................................................ 13

*United States ex rel. Morongo Band of Mission Indians v. Rose,*
  34 F.3d 901 (9th Cir. 1994).............................................................................. 10

*Vehicle Serv. Group, LLC v. Auto Equip. Co.,*
  838 F. Supp. 2d 842 (S.D. Ind. 2011) ............................................................... 11

*Wright v. St. Landry Pub. Hous. Corp.,*
  949 So. 2d 659 (La. App. 3 Cir.)......................................................................... 6

**Statutes**

28 U.S.C. § 1332 ................................................................................................ 25

La. Code Civ. Proc. art. 288................................................................................. 6

La. Rev. Stat. Ann. § 1:55(A)(1) ........................................................................... 6

**Rules**

Fed. R. Civ. P. 13(g) ............................................................................................ 22

Fed. R. Civ. P. 19 ................................................................................................ 16

Fed. R. Civ. P. 19(a)(1)........................................................................................ 8

Fed. R. Civ. P. 19(b) ........................................................................................................... 13

Fed. R. Civ. P. 19(b)(1)(2).................................................................................................... 8

Fed. R. Civ. P. 19(b)(2)........................................................................................................ 16

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1613 at 181-82 (3d
    ed. 2011)........................................................................................................................... 14

## INTRODUCTION

BP Products is the only party that is saddled with—and will be stuck with—prematurely degrading fireproofing material at its Indiana refinery.  BP Products' witnesses and documents are located at the Indiana refinery.  And all of BP Products' damages will be incurred in Indiana. Despite these indisputable facts, defendants AMC, Tecon, and Trinity petition this Court to force BP Products, the only injured party and proper plaintiff, to litigate this case in Louisiana state court.  Defendants' motions to dismiss are just another example of AMC and Tecon's ill-conceived effort to forum shop.

In December 2012, knowing full well that the parties' tolling agreement would expire over a weekend, AMC and Tecon persuaded the Deputy Clerk of Court for Calcasieu Parish, Louisiana to open the courthouse at 12:00 a.m. on Saturday, December 1, 2012—a legal holiday in Calcasieu Parish—so that they could file a preemptive declaratory judgment action.  AMC and Tecon's Complaint seeks a declaration that they are not responsible for the degrading fireproofing material at BP Products' Indiana refinery.  BP Products, on the other hand, in accordance with the local rules, filed this action in this courthouse—less than ten miles from the refinery—in person at 9:00 a.m. on December 3, 2012, the first business day after the tolling agreement expired.

Although the Louisiana court should dismiss the Louisiana action because the clerk exceeded his authority when he filed the complaint on a legal holiday and the law disfavors the use of preemptive declaratory judgments to forum shop, AMC, Tecon, and now Trinity argue that this Court should instead dismiss this properly-filed case in favor of the Louisiana action. Defendants argue that BPCNA—a corporate affiliate and indirect parent of BP Products—is a necessary party and this case is so extraordinary that this Court should abstain from exercising its jurisdiction in favor of the Louisiana lawsuit.  Defendants are wrong on both counts.

1

First, BPCNA is not a necessary party because defendants do not face a substantial likelihood of multiple or inconsistent obligations if BPCNA is not joined.  Second, this is not one of those extraordinary cases where this Court should decline to exercise its jurisdiction under *Colorado River*.  This action is not "parallel" to the Louisiana action and, in any event, defendants have failed to show that "exceptional circumstances" exist warranting abstention. Because AMC, Tecon, and Trinity have failed to present any valid basis to dismiss this action, this Court should deny their motions and allow this case to proceed.

## BACKGROUND

### I.    BP PRODUCTS MODERNIZES THE INDIANA REFINERY

The Indiana refinery is located on the southwestern shore of Lake Michigan and the Indiana Harbor Ship Canal in the communities of Whiting, East Chicago, and Hammond, Indiana.[1]  The Indiana refinery is the second largest refinery in BP Products' refining system and the sixth largest refinery in the United States.[2]  Operations at the Indiana refinery began over 120 years ago and the refinery now employs thousands of full-time employees and contractors in Indiana.[3]

BP Products is currently investing several billion dollars in northwest Indiana to modernize the Indiana refinery so that it will be able to process heavier crudes.[4]  As part of the modernization project, BP Products is modifying almost every processing unit at the Indiana refinery.[5]  To BP Products' knowledge, the modernization project is the largest private sector

---

[1]    BP Global website, http://www.bp.com/sectiongenericarticle.do?categoryId=9030203&contentId =7055766#7205736 (last viewed February 6, 2013).
[2]    *Id.*
[3]    *Id.*
[4]    *Id.*
[5]    *Id.*

investment ever made in Indiana and one of the largest construction projects in North America.[6] For the modernization project, BP Products requires thousands of tons of steel to construct the physical structures that support the oil and gas refinery equipment.[7]   The steel structures are coated with Pyrocrete, a cementitious inorganic fireproofing product that its manufacturer, Carboline Company, specifically recommends for use at refineries.[8]   Pyrocrete is applied to delay damage to steel in the event of a fire.

BP Products, through its agents Fluor Enterprises, Inc. ("Fluor") and Foster Wheeler USA Corp. ("Foster Wheeler"), contracted with defendants Trinity Steel Fabricators, Inc. ("Trinity") and Schuff Steel Company ("Schuff") to supply the fireproofed structural steel that BP Products needed for the modernization project.[9]   BP Corporation North America Inc. ("BPCNA"), BP Products' indirect parent company, entered into framework agreements with Trinity and Schuff that provided the general terms and conditions for the steel purchase.[10]   BP Products then entered into the specific purchase order contracts with Trinity and Schuff for the actual supply of the structural steel for the Indiana refinery.   Trinity and Schuff entered into subcontracts with Alfred Miller Contracting Company ("AMC") and Tecon Services, Inc. ("Tecon") to prepare and apply Pyrocrete to the steel for the Indiana refinery.[11]   At the time, all of the parties knew that they were manufacturing and applying Pyrocrete to structural steel for use at the Indiana refinery.[12]

---

[6]   BP Global website, http://www.bp.com/liveassets/bp_internet/globalbp/STAGING/global_assets/downloads/ W/WRMP.pdf, (last viewed Feb. 6, 2013).

[7]   BP Compl. [Dkt. #1] ¶¶ 1-3.

[8]   *Id.* ¶ 16.

[9]   Ex. 1, AMC and Tecon's Pet. For Damages & Decl. J. ¶¶ 14-15, *Alfred Miller Contracting Co., v. Carboline Co.*, No. 2012.004965 F (14th Dist. Ct. La. Dec. 1, 2012) ("AMC/Tecon Compl.").

[10]   BP Compl. [Dkt. #1] Exs. C & E (collectively "Framework Agreements").   Trinity and BP Products entered into an amendment of the Trinity Framework Agreement on Oct. 25, 2010.  BP Compl. [Dkt. #1] Ex. C at 16.

[11]   Ex. 1, AMC/Tecon Compl. ¶¶ 14-17.

[12]   *See* BP Compl. [Dkt. #1] Exs. B & D (referencing "Fluor Enterprises Acting as Agents for BP OCC Project Located in Whiting, Indiana"; BP Compl. [Dkt. #1] Ex. A § 1 (identifying scope of work as "detail, furnish,

## II.     THE PYROCRETE AT THE INDIANA REFINERY STARTS TO DEGRADE

None of the defendants dispute that the Pyrocrete at the Indiana refinery is degrading prematurely and should be remediated.[13]  BPCNA formally notified the defendants of the problems with the Pyrocrete in August 2011.[14]  Effective September 1, 2011, the parties entered into a tolling agreement whereby each party agreed "not to file any court action or to institute any arbitration or other adversary proceedings against any other Party" through October 15, 2012.[15]  The tolling agreement expressly extended to the parties' "affiliates or related-entities," which included BP Products, an indirect subsidiary of BPCNA.[16]  The parties extended the tolling agreement effective August 1, 2012 and agreed not to file claims against one another on or before October 15, 2013 unless a party terminated the agreement, in which case, the agreement would expire thirty days after notice from the terminating party.[17]

BP Products has since started the remediation process, which requires extensive and costly repair to the failing Pyrocrete at the Indiana refinery.  All of the defendants have requested access to the Indiana refinery to observe and participate in the remediation process.[18]  BP Products has worked extensively with defendants to secure access to the Indiana refinery to observe the failing Pyrocrete and monitor the remediation efforts.[19]  To date, none of the

---

fabricate, galvanize, fireproof and deliver to BP's Whiting Refinery - Whiting, Indiana all structural steel"); BP Compl. [Dkt. #1] Ex. F at 1 (shipping directions to "BP/OCC Coker Refinery . . . East Chicago, IN"); Ex. 1, AMC/Tecon Compl. ¶¶ 14, 26; Ex. 2, Carboline Answer to Pet. for Damages & Decl. J. ¶ 126 ("Carboline Answer").

[13]  *See, e.g.*, Ex. 1, AMC/Tecon Compl. ¶¶ 40-44; Trinity Mem. in Supp. of Mot. to Dismiss at 5 [Dkt. #29]; Ex. 2, Carboline Answer ¶¶ 40-44; Schuff Steel Company's Answer, Affirmative Defenses, and Cross-Claim [Dkt. #49].

[14]  AMC/Tecon Mot. to Dismiss Ex. 1 [Dkt. #32-1].

[15]  Ex. 3, 9/1/11 Tolling Agmt. ¶¶ 2, 4-5.

[16]  *Id.* ¶ 14 ("This Agreement shall apply and inure to the benefit of the Parties and any affiliates or related-entities, and shall be binding on the Parties and their successors and assigns.").

[17]  Ex. 4, 8/1/12 Tolling Agmt. Extension ¶ 2.

[18]  Ex. 5, 11/7/12 Ltr. from J. Walsh to C. Shapiro; Ex. 6, 8/16/12 Ltr. from G. Brown to C. Shapiro; Ex. 7, Trinity Request for Entry Upon Land for Inspections.

[19]  Ex. 8, 8/20/12 Ltr. from C. Shapiro to counsel for all defendants.

defendants have contributed to the remediation costs.[20]   Instead, defendants are blaming each other for causing BP Products' injuries.   AMC and Tecon claim that Carboline is responsible because the Pyrocrete itself is defective and Carboline claims that AMC and Tecon are responsible because they did not follow the proper procedures when they applied the Pyrocrete to the steel.[21]   BP Products is the only party that has suffered damages.

## III.   BP PRODUCTS PROPERLY FILES THIS ACTION IN INDIANA

Carboline terminated the tolling agreement on November 1, 2012, and, per its terms, the tolling agreement expired on Saturday December 1, 2012.[22]   On December 3, 2013, the first business day after the tolling agreement expired, BP Products, in accordance with this court's local rules, filed the complaint in this case in person at 9:00 a.m., when the clerk's office opened.[23]   BP Products' complaint seeks damages for costs that it has incurred and will continue to incur as a result of (1) the defective Pyrocrete that Carboline manufactured; and/or (2) Alfred Miller and Tecon's failure to properly prepare and apply the Pyrocrete to the structural steel.[24] BP Products also seeks to recover damages from Trinity and Schuff based on their failure to provide BP Products with fireproofed structural steel free of defects.[25]   Carboline recently filed its answer and a cross-claim against AMC, and Schuff also filed an answer and asserted cross-claims against AMC, Tecon, and Carboline.[26]

## IV.   AMC AND TECON IMPROPERLY FILE THE LOUISIANA ACTION

To win a perceived "race to the courthouse" and attempt to deprive BP Products—the

---

[20]   BP Compl. [Dkt. #1] ¶ 28.
[21]   Ex. 1, AMC/Tecon Compl. ¶¶ 49-50; Ex. 2, Carboline Answer ¶ 50.
[22]   Ex. 1, AMC/Tecon Compl. ¶ 55.
[23]   Per the Northern District of Indiana's local rules, a plaintiff must file his complaint in person at the courthouse. Ex. 9, N.D. Ind. CM/ECF Civil and Criminal User Manual at 4.
[24]   BP Compl. [Dkt. #1] at 21.
[25]   *Id.*
[26]   Carboline Cross Claim [Dkt. #48]; Schuff's Answer and Cross Claims [Dkt. #49].

true injured party—from its choice of venue,[27] AMC and Tecon convinced a Louisiana clerk to open a Louisiana state courthouse at midnight on Saturday, December 1, 2012, so that they could file a declaratory judgment action against BP and others.[28] Not only was AMC and Tecon's request unusual, it also caused the Deputy Clerk to exceed his statutory authority and disregard the proper procedure for filing complaints in Louisiana, rendering the Louisiana Complaint invalid and a legal nullity.[29] BP Products has moved to dismiss the Louisiana complaint on this and other bases and because AMC and Tecon are improperly using the declaratory judgment process as a means to forum shop.[30] In contrast to BP Products' complaint here, which requests damages from each defendant, AMC and Tecon only seek a declaration of non-liability as to nine of the ten defendants they sued in Louisiana, including BP Products. AMC and Tecon's only affirmative claims are against Carboline and are premised entirely on liability that AMC or Tecon may have to BP Products.

The litigation in Louisiana is in the very early stages. To bolster its arguments here, Trinity filed an answer and cross-claims and served initial discovery requests along with a

---

[27]   AMC and Tecon do not dispute that they filed their lawsuit at midnight on December 1, 2012 to forum shop. Ex. 21, AMC/Tecon Resp. to BP Defs.' Mot. to Dismiss at 10 (noting that AMC and Tecon "were aware that BP Corporation intended to sue them", but AMC and Tecon "preferred to have their contractual and legal rights and obligations as against all interested parties ascertained in Lake Charles, Louisiana—where AMC is headquartered.").

[28]   Ex. 1, AMC/Tecon Compl. at 1.

[29]   Saturdays in Calcasieu Parish are legal holidays. La. Rev. Stat. Ann. § 1:55(A)(1). Per the Louisiana Code, the clerk is only permitted to perform certain tasks on legal holidays and opening the courthouse for filings is not one of them. La. Code Civ. Proc. art. 288. To the extent defendants point to La. Rev. Stat. Ann. § 1:55 to support their position that the filing was valid, defendants are wrong. To be sure, Section 1:55 permits *a party* to file a complaint on a Saturday (e.g., by fax filing, *see Wright v. St. Landry Pub. Hous. Corp.*, 949 So. 2d 659, 662 (La. App. 3 Cir.) (holding that a complaint filed via fax when the clerk's office was closed was timely)), however, Article 288 expressly prevents the clerk from doing anything other than signing an order or issuing writs of attachment or sequestration or issuing an injunction on a legal holiday. La. Code Civ. Proc. art. 288.. ("The ***only*** functions which a clerk of a district court may exercise on a legal holiday are (1) The signing of an order for the issuance of a writ of attachment or sequestration by a clerk of a district court . . . ; and (2) The issuance of a writ of attachment, sequestration, or injunction.") (emphasis added).

[30]   AMC and Tecon also sued BPCNA in the Louisiana action, and BPCNA moved with BP Products to dismiss the Louisiana complaint. For the reasons described herein, BPCNA is not a necessary party to litigation of this dispute.

request for additional access to the Indiana refinery.[31]  Those efforts are currently at a standstill because, on January 11, 2013, Carboline removed the Louisiana action to federal court.[32]  On January 25, 2013, AMC and Tecon moved to remand the case to state court.[33]  The federal court in Louisiana has set a hearing on AMC and Tecon's motion to remand for March 8, 2013 and a hearing on BP's motion to dismiss on April 5, 2013.[34]  On January 18, 2013, AMC, Tecon, and Trinity moved to dismiss BP Products' complaint.  BP Products submits this single opposition to both motions because they make the same arguments.[35]

## ARGUMENT

Defendants AMC, Tecon, and Trinity claim that this action should be dismissed because BPCNA is a necessary and indispensable party or, alternatively, that this Court should abstain in favor of the Louisiana action under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  Defendants are wrong on both counts.

## I.   BPCNA IS NOT NECESSARY OR INDISPENSIBLE TO THIS LITIGATION.

Courts conduct a two-step analysis to determine whether to dismiss an action for failure to join a party under Rule 19.  *See Askew v. Sheriff of Cook County*, 568 F.3d 632, 635 (7th Cir. 2009).  First, a court must determine if a party is a "required" or "necessary" party under Rule 19(a)(1).  *Id.*  Second, if a party is required under Rule 19(a)(1) but joinder is not feasible (i.e., because it will destroy diversity), the court must consider whether in "equity and good conscience", the litigation should proceed in that party's absence.  *See Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 (7th Cir. 2001).  The case is subject to dismissal only if the court

---

[31]   *See generally* Exs. 10-12, Trinity First Sets of Discovery to AMC, BP Products/BPCNA, and Carboline.
[32]   Ex. 13, Carboline Company's Notice of Removal.  Carboline has also filed answers in Louisiana federal court to the Louisiana Complaint and the Trinity's cross-claims.  Ex. 2, Carboline's Answer; Ex. 14, Carboline's Answer to Defendant Trinity Steel Fabricator, Inc.'s Decl. J. Cross-Claim for Indemnity.
[33]   Ex. 15, AMC/Tecon Motion to Remand.
[34]   Ex. 16, Notice of Motion Setting (Jan. 28, 2013); Ex. 17, BP Defs.' Mot. to Dismiss & Mem. in Supp. ("BP Mot. to Dismiss"); Ex. 18, Notice of Motion Setting (Jan. 30, 2013).
[35]   AMC/Tecon's Mot. to Dismiss [Dkt. #31]; Trinity's Mot. to Dismiss [Dkt. #28].

determines that the case cannot proceed without the absent party.  *Id.*  Finally, as an alternative to dismissal, the court may shape a party's relief to avoid prejudice to other parties.  Fed. R. Civ. P. 19(b)(1)(2).  Defendants bear the burden of establishing that BPCNA's presence is necessary and that this case should not proceed in its absence.  *See Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 2006 WL 3305122, at *5 (S.D. Ind. Aug. 16, 2006).

A.    **BPCNA Is Not A Necessary Party Under Rule 19(a)(1).**

Defendants argue that BPCNA is a necessary party because (1) it asserted an interest in the subject matter of this dispute when it sent an August 2011 letter and entered into the tolling agreement; and (2) BPCNA is a party to the framework agreements with Trinity and Schuff.[36] Based on this alleged interest, defendants claim that they will be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because BPCNA could subsequently file a separate action against them for the same problems with the Pyrocrete.  *See* Fed. R. Civ. P. 19(a)(1) (a party must be joined if it "the person's absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest").  Defendants are wrong.

1.    **BPCNA Has Disclaimed Any Purported Interest In The Degrading Pyrocrete.**

Even if BPCNA, at one point, claimed an interest in the degrading Pyrocrete, defendants do not face a substantial risk of multiple lawsuits because BPCNA has disclaimed that interest. A disclaimer of interest renders an otherwise necessary party unnecessary for purposes of joinder.  *See, e.g.*, *Grant Cnty. Dep. Bank v. McCampbell*, 194 F.2d 469, 473 (6th Cir. 1952); *Romag Fasteners, Inc. v. Bauer*, 2011 WL 5513380, at *4 (S.D.N.Y. Nov. 9, 2011).

For example, in *Romag Fasteners*, plaintiff sued to enforce a judgment.   2011 WL

---

[36]    AMC/Tecon Mem. in Supp. of Mot. to Dismiss at 6-7 [Dkt. # 32].

5513380, at *3.  Defendant moved to dismiss for failure to join a non-diverse company, a co-obligee with an equal legal interest as plaintiff in enforcing the judgment.  *Id.*  Defendant argued that it could be subject to multiple lawsuits for the same damages if the non-diverse company was not joined.  *Id*.  In response, the president of the non-diverse company submitted a declaration stating that it "ha[d] no interest" in enforcing the judgment.  *Id.* at *4.  In light of the declaration, the court held that the company was not a necessary party since there was no "substantial risk" that the defendant would incur multiple or inconsistent obligations.  *Id.*

Similarly, in *Grant County Deposit Bank*, the Sixth Circuit ruled that a one-time indispensable party "ceased to be an indispensable party" upon filing of a disclaimer of interest in the litigation.  194 F.2d at 473.  The Sixth Circuit recognized that, at the time suit was commenced, a partner in a partnership was a necessary party and diversity jurisdiction would have been destroyed if he were joined.  *Id.* at 472.  After the suit was filed, however, the partner filed a disclaimer of interest.  *Id.*  The court of appeals affirmed the district court's continued exercise of jurisdiction and determined that the lawsuit properly continued in the partner's absence.  *Id.* at 473.  Here, as in *Romag Fasteners* and *Grant County Deposit Bank*, BPCNA has disclaimed any interest in this litigation.[37]  As a result, defendants do not have a risk—much less a substantial risk—that BPCNA will file a future claim for the degradation of the Pyrocrete.

Moreover, even if BPCNA had not disclaimed its interest, defendants' concern that BPCNA would later sue does not render BPCNA a necessary party.  Courts have distinguished the "inconsistent obligations" discussed in Rule 19 from "inconsistent adjudications."  *See, e.g.*, *Grubb & Ellis Co. v. Huntington Hoffman, LLC,* 2010 WL 4962846, at *3 (N.D. Ill. Dec. 1, 2010).  In *Grubb & Ellis*, the court held that defendant faced a risk of multiple adjudications, not multiple obligations as contemplated by Rule 19 and; therefore, defendant was not a necessary

---

[37] *See* Ex. 19, Declaration of H. Brian Centeno.

party because it would not be subject to inconsistent obligations.  *Id.* at *4.  The court explained that "[i]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident."  *Id.* at *3.  As in *Grubb & Ellis*, defendants' concern about being sued again is not a sufficient basis for this Court to find that BPCNA is a necessary party.

Furthermore, defendants do not face a substantial risk of multiple lawsuits because BPCNA has expressly chosen not to participate in this action.  *See, e.g.*, *Cent. States, Se. & Sw. Area Pension Fund v. Safeco Ins. Co.*, 717 F. Supp. 572, 574 (N.D. Ill. 1989) (rejecting as "speculative" the possibility of further litigation between a party and an absent person).  The Seventh Circuit has equated indifference to pending litigation as signaling an "insubstantial" risk of multiple obligations.  *See, e.g.*, *Davis Cos. v. Emerald Casino, Inc*., 268 F.3d 477, 485 (7th Cir. 2001); *see also United States ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 908 (9th Cir. 1994) (because the absent party "did not feel that it was necessarily in his interest to remain a party" in the action, "it is inappropriate for one defendant to attempt to champion [the] absent party's interests").  In *Davis Companies*, the court determined that "the risk of an additional lawsuit is certainly insubstantial because [the non-joined party] is clearly disinclined to sue."  268 F.3d at 485.  As in *Davis*, BPCNA has opted not to participate in this litigation and clearly is not inclined to sue.  Accordingly, BPCNA is not a necessary party and this Court should deny defendants' motions to dismiss.

### 2.        BPCNA Does Not Have Rights Under The Contracts At Issue.

BPCNA also is not a required party simply because it is a party to the framework agreements with Trinity and Schuff.  The defendants point to dicta in *Davis Companies* to support their assertion that "[a] contracting party is the paradigm of an indispensable party," *see* 268 F.3d at 484, but BPCNA is not a party to the operative contracts—the purchase orders—and,

as such, is not automatically an indispensable party.[38]

And defendants' invocation of the framework agreements misses the point.[39]  First, BP Products' breach of contract claims against Trinity and Schuff arise out of Trinity and Schuff's failure to provide fireproof coated steel in accordance with the terms of the ***purchase orders***, not the framework agreements; the purchase orders are separate agreements from the framework agreements.  *See, e.g.*, *Vehicle Serv. Group, LLC v. Auto Equip. Co.*, 838 F. Supp. 2d 842, 846 (S.D. Ind. 2011) ("distributorship agreements and the purchase orders that arise under them are different contracts") (citing *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 705 (7th Cir. 1995)); *Ariens Co. v. WEC Co.*, 2006 WL 273510, at *3 (E.D. Wis. Feb. 1, 2006) ("An order to purchase is an offer, which if accepted creates a separate contract and implicates all of the remedies provided by law, subject to the parties' own terms and conditions.").  In fact, the framework agreements contemplated the use of separate purchase orders and the purchase orders themselves state that they are separate "binding agreement[s] of Seller [Trinity/Schuff] and Buyer [BP Products]."[40]  The Trinity purchase order even goes so far as to say that the purchase order "constitutes the entire agreement of the parties."[41]  Because BPCNA is not a party to the purchase orders and does not have rights under the purchase orders that could have been violated, BPCNA is not a co-obligee sufficient to require its presence in this litigation.

---

[38]   Even if BPCNA was a party to the purchase orders (which it is not), the test of whether a contracting party is indispensable is more nuanced than the dicta from *Davis Companies* suggests.  *Nomanbhoy v. Boxwalla*, 2013 WL 329038, at *5 (N.D. Ill. Jan. 29, 2013); *see also Quantlab Fin., LLC, Quantlab Techs. Ltd. (BVI) v. Tower Research Capital, LLC*, 715 F. Supp. 2d 542, 550 (S.D.N.Y. 2010) (non-diverse corporate affiliate plaintiff with equal rights to enforce the contract at issue was not an indispensable party).  Specifically, in the Rule 19 context, courts distinguish between suits to invalidate a contract and suits for breach of contract.  *See, e.g.*, *Nomanbhoy* 2013 WL 329038, at *4-5.  Here, BP Products is not suing to invalidate a contract.

[39]   AMC/Tecon Mem. in Supp. of Mot. to Dismiss at 10 [Dkt. #32] ("corporate subsidiaries that were co-obligees with parent corporation under contract [are] indispensable parties").

[40]   BP Compl. [Dkt. #1] Ex. C at 4 ("Formal issuance of purchase orders will be made by BP's Engineering, Construction and Fabrication Contractors (EPF) or Modularization Contractors as applicable."); BP Compl. [Dkt. #1] Ex. E at 4 (same); BP Compl. [Dkt. #1] Ex. B at 3 ("THIS PURCHASE ORDER SHALL BECOME A BINDING AGREEMENT OF SELLER AND BUYER UPON SELLER SIGNING AND RETURNING AN ACCEPTANCE COPY"); BP Compl. [Dkt. #1] Ex. D at 3 (same)).

[41]   *See, e.g.*, BP Compl. [Dkt. #1] Ex. B at 16.

11

*Nomanbhoy*, 2013 WL 329038, at *5 (a co-obligee is a "contracting part[y] other than the plaintiff whose rights *under the contract* may have been violated") (emphasis added).

Furthermore, to the extent defendants claim that BPCNA is a necessary party because BP Products' alleges that Trinity and Schuff breached an express warranty in the framework agreements, defendants' arguments fail. The express warranties in the framework agreements are for the benefit of BP Products, not BPCNA. The warranty provision states that, "Seller warrants to Buyer . . . that the products sold by Seller . . . will be of good and merchantable quality and will be fit for Buyer's intended purposes."[42] The framework agreement defines BPCNA as the "Company", but does not define "Buyer."[43] The term "Buyer", however, is expressly defined in the purchase orders as Fluor or Foster Wheeler "Acting as Agents for BP Products North America, Inc.", not BPCNA.[44] Because the warranties run to BP Products as the "Buyer", not BPCNA, BPCNA is not a necessary party here. *See Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1131 (7th Cir. 1997) (under Indiana law, "[c]ontract terms can be incorporated by reference in a separate document . . . ."); *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F. Supp. 2d 985, 1001 (S.D. Ind. 2001) (same). Because BPCNA is not a signatory to the purchase orders and BP Products is suing for breach of the purchase orders and warranties that run to BP Products, not BPCNA, BPCNA's presence is not required for this lawsuit to proceed and defendants' motions should be denied.

**B.     This Case Can Proceed In Equity And Good Conscience Because BPCNA Is Not An Indispensable Party.**

Even if BPCNA were a necessary party (which it is not), BPCNA is not an indispensable party because this action can proceed, in equity and good conscience, without BPCNA. *See U.S.*

---

[42]   BP Compl. [Dkt. #1] Ex. C ¶ 6.
[43]   *Id.*
[44]   *Id.*; BP Compl. [Dkt. #1] Ex. B § 7 (directing parties to refer to framework agreement for commercial notes); BP Compl. [Dkt. #1] Ex. D § 7 (same).

*ex rel. Hall v. Tribal Develop. Corp.*, 100 F.3d 476, 479 (7th Cir. 1996). Defendants argue that BPCNA is an indispensable party because a judgment rendered without BPCNA: (1) "would severely prejudice the existing parties, who could face the risk of multiple or inconsistent obligations to BP Corporation and BP Products;" (2) such judgment "would be inadequate because it would not finally resolve AMC's and Tecon's liability for the problems with Pyrocrete® 241 at the Whiting refinery;" and (3) BP Products has an adequate remedy "if this action is dismissed because it is a party to the pending Louisiana Litigation, which involves all potentially affected parties and the same issues raised in the pending action."[45] To the contrary, defendants face no risk of incurring multiple or inconsistent obligations. Even if some theoretical risk existed, this Court could easily fashion relief to avoid that risk, as contemplated by Rule 19(b). Defendants' remaining arguments are makeweight.

### 1.   Defendants Will Not Be Prejudiced In BPCNA's Absence.

Defendants' primary concern appears to be the possibility that BPCNA, if not joined, might sue defendants in a separate litigation.[46] As discussed above, BPCNA has (1) expressly disclaimed its interest in this dispute; and (2) shown that it is disinclined to sue. Accordingly, defendants do not face any threat of additional litigation and will not be prejudiced. Moreover, even if a risk of subsequent litigation somehow existed, defendants would not be prejudiced because *res judicata* would bar BPCNA, a corporate affiliate and indirect parent of BP Products, from pursuing further litigation against these defendants. *See, e.g.*, *Anchor Glass Container Corp. v. Buschmeier*, 426 F.3d 872, 880 (7th Cir. 2005) (finding arbitration judgment involving parent company was *res judicata* on its subsidiary); *Sampson v. Yellow Cab Co.*, 2000 WL 33673505, at *2 (7th Cir. Apr. 26, 2000) (finding parent corporation was barred from relitigating

---

[45]   AMC/Tecon Mem. in Supp. of Mot. to Dismiss at 10 [Dkt. #32] (citing Fed. R. Civ. P. 19(b)).
[46]   *Id.* at 16 ("such a course would leave AMC, Tecon, and the other defendants subject to a substantial risk of incurring multiple or inconsistent obligations").

claims brought by subsidiary); *Hermitage Ins. Co. v. Salts*, 698 N.E.2d 856, 859 (Ind. Ct. App. 1998) ("The term 'privity' [in the context of res judicata] includes . . . those whose interests are represented by a party to the action."); *see also In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003) (holding that corporations with a common parent shared "a common economic interest" sufficient to "establish privity for purposes of the *res judicata* defense"); *Mars, Inc. v. Nippon Conlux Kabushiki–Kaisha*, 855 F. Supp. 673, 677 (D. Del. 1994) (holding that a wholly-owned subsidiary was in privity with its parent, so that a suit against one barred a later suit on the same claims against the other).

Here, BP Products and BPCNA have a common parent company, BP America Inc., and BPCNA is the indirect parent of BP Products.[47]  As a matter of law, BPCNA is in privity with BP Products for the purposes of this litigation.  Accordingly, *res judicata* would bar BPCNA from bringing a subsequent suit on these or related claims.  *Highway J Citizens Group. v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006) (*res judicata* precludes the "parties or their privies from relitigating issues that were or could have been raised in that action.") (*quoting Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *McCain v. Spaulding*, 2010 WL 3522986, at *1 (N.D. Ind. Sept. 2, 2010) (same).  As a result, defendants will not suffer any prejudice if BPCNA is absent from this case.[48]

### 2. A Judgment Here Would Completely Resolve Defendants' Potential Liability For Issues With The Pyrocrete.

Curiously, defendants assert, without explanation, that the absence of BPCNA from this

---

[47]  *See* BP Products Corporate Disclosure Statement [Dkt. # 5]; Ex. 20, BPCNA Corporate Disclosure Statement.

[48]  In addition, even if BPCNA was a co-obligee to the purchase orders or warranties, Rule 19 "give[s] the court the flexibility to allow an action to go forward without a joint obligee when no prejudice would result either to the parties or to the absentee and effective relief can be granted." *Romag Fasteners*, 2011 WL 5513380, at *4 (citing Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1613 at 181-82 (3d ed. 2011)).  Because BPCNA has disclaimed its interest in this litigation, and has no intention of pursuing further litigation over these issues, defendants would not be subject to any prejudice if the court allowed this action to go forward.

14

litigation "would preclude the Court from according complete relief among the existing parties."[49]   Defendants do not, however, articulate a reason why this Court cannot accord complete relief other than to imply—once again—that BPCNA may file a subsequent claim against defendants if BP Products is unsuccessful.   But even assuming that BPCNA has an interest in this litigation (which it has already disclaimed) and has rights under the purchase orders on which it could sue (which it does not), then *res judicata* would preclude BPCNA from bringing a claim arising out of the degrading Pyrocrete.   *See In re Colonial Mort. Bankers Corp.*, 324 F.3d at 19.   Accordingly, defendants do not face exposure to BPCNA in a subsequent action.

### 3. Whether BP Products Has An Adequate Alternative Remedy Is No Reason To Dismiss The Indiana Action.

The *existence* of an alternative forum has little bearing on whether an action should be dismissed.  *See Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 501 n.9 (7th Cir. 1980) ("The absence of an alternative forum would weigh heavily . . . against dismissal while the existence of another forum would not have as significant an impact in favor of dismissal."); *Bonnet v. Trs. of Schs. of 41 N., Range 12 E. of the Third Principal Meridian, Cook County, Ill.*, 563 F.2d 831, 833 (7th Cir. 1977) ("the availability of an alternative remedy, standing alone, [is not] a sufficient reason for deciding that the action should not proceed among the parties before the court").   Indeed, the existence of an alternative forum weighs against dismissal in cases like this where, BP Products, the injured party and true plaintiff, would be deprived of its chosen forum.  *Pasco Int'l. (London) Ltd.*, 637 F.2d at 501 ("To outweigh the plaintiff's choice some additional interest of the absent person, the other parties or the judicial system must be found."); *see also Askew v. Sheriff of Cook County, Ill.*, 568 F.3d 632, 634 (7th Cir. 2009) ("Courts are reluctant to dismiss for failure to join where doing so deprives the plaintiff of his choice of

---

[49]   AMC/Tecon Mem. in Supp. of Mot. to Dismiss at 10, 16 [Dkt. # 32].

federal forum.").  In *Pasco*, the district court dismissed for failure to join an indispensable party in favor of an alternative state court action.  637 F.2d at 505.  On appeal, the Seventh Circuit held that defendant's "crocodile tears . . . constitute [an] insufficient reason to relegate this suit to the courts of Illinois."  *Id.* at 505-06.  As in *Pasco*, defendants' assertion that an alternative forum exists is not a valid reason to deprive BP Products of its chosen forum and relegate this case to Louisiana state court.

### 4.      This Court Can Fashion Relief That Would Avoid Any Prejudice

Even if some remote risk of prejudice to defendants remained as a result of BPCNA's absence from this litigation, this Court is capable of fashioning a judgment that would avoid any prejudice.  Rule 19(b) expressly contemplates that "any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures." Fed. R. Civ. P. 19(b)(2).  Numerous alternatives exist to avoid any potential prejudice.  For example, this Court could incorporate BPCNA's declaration of disinterest into its order denying defendants' motions.  Although unnecessary, this Court could condition the denial of defendants' motion on BPCNA's stipulation that it will not bring a future lawsuit.  Or, this Court could order BP Products to stipulate on behalf of itself and its indirect parent, BPCNA, that BPCNA will not seek recovery for the same damages at issue in this litigation as a condition of denying defendants' motions.   Any of these alternatives would squelch any theoretical risk that defendants may somehow suffer prejudice as a result of BPCNA's absence from this litigation.

Ultimately, defendants have failed to carry their burden to show that: (1) BPCNA is a party which "must be joined" under Rule 19(a); and (2) this case cannot "in equity and good conscience" continue in BPCNA's absence.  Fed. R. Civ. P. 19.  Accordingly, this Court should deny defendants' motions to dismiss and allow this case to proceed to discovery.

## II.   DEFENDANTS HAVE NOT—AND CANNOT—PROVE THE EXCEPTIONAL CIRCUMSTANCES REQUIRED FOR *COLORADO RIVER* ABSTENTION.[50]

Defendants also argue that this Court should decline to exercise its jurisdiction under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).[51]   But, defendants have it backwards:  it is the Louisiana action—a declaratory action that two parties who have yet to suffer an injury filed in the dead of Saturday night thousands of miles from where the Pyrocrete is degrading—that should be dismissed or stayed in favor of this action.[52]

Defendants have not—and cannot—show that this is one of those rare cases where the federal court should ignore its unflagging obligation to exercise its subject matter jurisdiction. *Colorado River*, 424 U.S. at 813 ("Abstention from the exercise of federal jurisdiction is the exception, not the rule."); *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 593 (7th Cir. 2005) ("We again emphasize the remarkably difficult standard that must be met before we can refuse our 'virtually unflagging obligation' to exercise jurisdiction."); *Prop. & Cas. Ins. Ltd. v. Cent. Nat. Ins. Co. of Omaha*, 936 F.2d 319, 326 (7th Cir. 1991) (defendants have the burden to show abstention is appropriate).

### A.   This Federal Case Is Not Parallel To The Action Pending In Louisiana.

The first step in the *Colorado River* analysis asks whether the federal and state cases are actually "parallel."  *Fifth Third Bank v. Double Tree Lake Estates, LLC*, 2012 WL 589432, at *2-3 (N.D. Ind. Feb. 21, 2012).  Where the proceedings are not parallel, the analysis ends.  *Id.*

---

[50]   Defendants' *Colorado River* argument is not only improper, it is premature because the Louisiana action is currently pending in federal, not state, court.  *See Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004) (holding that the *Colorado River* abstention doctrine only applies where there is a pending state court action).

[51]   Defendants have failed to satisfy the exceptional circumstances standard required to compel this court to abstain from exercising its jurisdiction.  Even assuming, however, that *Colorado River* abstention is appropriate (which it is not), dismissal would be inappropriate.  *See Lumen Const., Inc. v. Brant Const. Co.*, 780 F.2d 691, 698 (7th Cir. 1985) ("we reaffirm this court's decisions holding that a stay, not a dismissal without prejudice, is the appropriate procedural mechanism for a district court to employ in deferring to a parallel state court proceeding under the *Colorado River* doctrine."); *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1308 (7th Cir. 1988) (same).

[52]   *See* Ex. 17, BP Mot. to Dismiss.

17

Under *Colorado River*, two lawsuits are "parallel" only when "there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case," and "any doubt regarding the parallel nature of the [state] suit should be resolved in favor of exercising jurisdiction." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498-99 (7th Cir. 2011).

Here, the Indiana and Louisiana actions are not parallel because the Louisiana action will not resolve all claims at issue in the Indiana action. *See TruServ*, 419 F.3d at 593. In *TruServ Corp.*, the court held that a federal lawsuit was not parallel to a state lawsuit where some of plaintiff's federal court claims were not resolved in the state lawsuit even though the federal plaintiff chose not to raise its claims in the state court. *Id.* Similarly here, as currently pled, the Louisiana action will not dispose of all of BP Products' claims because neither AMC nor Tecon have asked the Louisiana court to determine whether BP Products is entitled to damages or the amount of any such damages. In fact, AMC and Tecon even admit that the proceedings are not parallel.[53]

Moreover, these cases are not parallel simply because BP Products can bring counterclaims or cross claims in the Louisiana action. In considering whether two cases are parallel for purposes of the *Colorado River* analysis, the Seventh Circuit gives little weight to the ability to assert counterclaims or crossclaims. *See id.*; *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 522 (7th Cir. 2001) (finding cases not parallel merely because federal action could be pleadable as a compulsory counterclaim in the state action). Here, because the Louisiana action does not include BP Products' damages claims—the core claims at issue—the actions are not parallel and this Court should deny defendants' motions to dismiss on *Colorado River*

---

[53] Ex. 21, AMC/Tecon Resp. to BP Defs.' Mot. to Dismiss at 2-3 ("The Indiana suit is not a parallel proceeding in which the claims brought by BP Products can be fully resolved as to all parties claiming an interest against Plaintiffs . . . ."); *id.* at 17 ("parallel litigation commenced by the injured party—a crucial circumstance that is missing in the present case"); *id.* at 19 ("in this case there is no parallel litigation in which all of the underlying claims for declaratory relief can be addressed").

grounds for this reason alone.

**B.    Exceptional Circumstances Do Not Exist To Justify Abstaining In Favor Of The Louisiana Action.**

Even if this case were parallel to the Louisiana action (which it is not), exceptional circumstances do not exist that would justify abstention.  Courts consider the following factors when determining whether to abstain in favor of a state court action: 1) the order in which jurisdiction was obtained by the concurrent forums; 2) the relative progress of state and federal proceedings; 3) the desirability of avoiding piecemeal litigation; 4) the inconvenience of the federal forum; 5) the source of governing law, state or federal; 6) the availability of removal; 7) whether the state has assumed jurisdiction over property; 8) the vexatious or contrived nature of the federal claim; 9) the adequacy of state-court action to protect the federal plaintiff's rights; and 10) the presence or absence of concurrent jurisdiction.  *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 701 (7th Cir. 1992).[54]   The weight assigned to each factor depends on the facts of each case.  *Finn v. Centier Bank*, 2011 WL 2893645, at *3 (N.D. Ind. July 15, 2011).  The factors are not "a mechanical checklist," but rather are to be applied in a "pragmatic, flexible manner with a view to the realities of the case at hand."   *Id.* (internal citations and quotation marks omitted).  On balance, these factors weigh against abstention.

**1.    This Case Is The First Properly Filed Action.**

AMC and Tecon failed to properly file their Louisiana complaint.  As a result, the complaint has no legal effect and should be dismissed.[55]   Specifically, the Deputy Clerk of Court for Calcasieu Parish exceeded his statutory authority when he, at the urging of counsel for AMC and Tecon, opened the courthouse at midnight on a legal holiday and filed AMC and Tecon's

---

[54]   Defendants concede that the state court has not assumed jurisdiction over property and this dispute does not involve federal questions that could be considered "vexatious or contrived".  Accordingly, those two factors do not weigh in favor of abstention.

[55]   Ex. 17, BP Mot. to Dismiss.

complaint. Accordingly, the complaint in this case—which BP Products filed in accordance with law at 9:00 a.m. on the first business day following the expiration of the tolling agreement— should be considered the first filed action.

Even if AMC and Tecon had properly filed their complaint (which they did not), this factor would weigh against abstention because the law disfavors recognizing a declaratory judgment action as first-filed where it is filed in anticipation of litigation by the injured plaintiff. *See, e.g.*, *Tempco Electric Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 750 (7th Cir. 1987) ("The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum.") (citation omitted).[56]

## 2.  The Louisiana Case Is In Its Procedural Infancy.

Even if the Louisiana action were filed first, this factor only weighs on the analysis to the extent that case has progressed significantly in relation to this one. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983) ("priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions"). Here, the relative progress of the Louisiana action does not weigh in favor of abstention.

First, although Trinity filed a counterclaim, cross claims, and some initial discovery requests in the Louisiana state court action (likely to bolster its arguments here), nothing has happened with respect to those pleadings and requests because defendant Carboline removed the

---

[56]   To the extent defendants argue that principles of federal comity dictate that this Court should dismiss or stay this action because the Louisiana action was filed first, defendants are wrong. First, the Louisiana action was not validly filed and, therefore, should not be deemed the first-filed. Second, even if the Louisiana complaint was valid, this case should proceed because the Seventh Circuit "has never adhered to a rigid 'first to file' rule." *Tempco*, 819 F.2d at 750; *see also id.* at 749 (where "the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later"); *Posnet Servs., LLC v. Cunningham*, 2006 WL 123774, at *3 (N.D. Ill. Jan. 11, 2006) ("a technical application of the law would merely encourage a race to the courthouse that would not promote the efficient operation of the judicial system.").

action to federal court.[57]   Accordingly, none of the parties are obligated to respond to Trinity's cross claims, counterclaims, or discovery requests until the federal court rules on the motion to remand.  *See, e.g.*, *Riley v. Walgreen Co.*, 233 F.R.D. 496, 499 (S.D. Tex. 2005) (finding that state court procedural deadlines were irreconcilable with the plain command of Rule 81(c) that federal rules govern procedure after removal).  Second, Trinity could have just as easily filed its crossclaims and counterclaim in the Indiana action—which BP Products filed on the first business day after the tolling agreement expired and a mere two days after AMC and Tecon filed the Louisiana case.  A defendant's decision to put one case caption on its pleadings and not another, when those cases were filed a mere days apart, does not weigh in favor of abstention. *Posnet Servs.*, 2006 WL 123774, at *3 (where actions were filed five days apart, relative progression of state case did not warrant abstention).  In any event, although Trinity has filed a pleading in the Louisiana action, defendants Schuff and Carboline have filed answers, affirmative defenses and crossclaims in this action.[58]   Accordingly, both actions are in their procedural infancies weighing against abstention.

### 3.    Allowing This Action To Proceed Will Not Result In Piecemeal Litigation.

Defendants argue that avoiding piecemeal litigation weighs in favor of this Court abstaining because (1) the Louisiana action is "more comprehensive"; (2) the Louisiana action will dispose of all claims presented in the Indiana action; and (3) Trinity must assert its counterclaim against AMC in Louisiana.  Defendants are wrong on all accounts.

First, the Louisiana case only appears "more comprehensive" because AMC and Tecon have joined additional defendants which are not necessary parties.  Specifically, AMC and Tecon

---

[57]   Ex. 13, Carboline Notice of Removal.
[58]   *See* Schuff Answer, Affirmative Defenses, and Cross-Claim [Dkt. #49]; Carboline Answer and Cross-Claim [Dkt. #48].

have named Fluor and Foster Wheeler as defendants, but Fluor and Foster Wheeler acted only as BP Products' disclosed agents and, therefore, are not necessary parties.  *See Broker's Trust Clearing Corp. v. Noe*, 1988 WL 93839, at *2 (N.D. Ill. Sept. 1, 1988).  AMC and Tecon also named DII and Land Coast.  BP Products elected, in its business judgment, not to name Land Coast or DII as defendants because (a) DII was only responsible for assembling steel modules (not applying Pyrocrete), (b) Land Coast was DII's subcontractor, and Land Coast applied a limited amount of Pyrocrete primarily at certain "block out" locations after the modules were assembled, and (c) the amount of Pyrocrete applied by Land Coast is a small percentage of the Pyrocrete at issue in this case[59]

Second, the Louisiana action will not dispose of all of the claims at issue in this case because the core claims—BP Products' claims for damages—are not before the Louisiana court. As a result, the Louisiana court has not been asked to decide whether BP Products is entitled to damages or what amount would be sufficient to compensate BP Products for its injury.  Third, Trinity does not provide any explanation as to why it could not file a crossclaim against AMC in this case.[60]  In fact, nothing would prevent Trinity from bringing crossclaims against defendants in the Indiana action.  *See* Fed. R. Civ. P. 13(g)  ("A pleading may state as a crossclaim any claim by one party against a coparty . . . .").

In the end, defendants have only themselves to blame for whatever risk of piecemeal litigation exists.  After all, it was AMC and Tecon that filed a premature and procedurally improper declaratory action in Louisiana.  In contrast, BP Products filed this case in the proper forum (i.e., where the Pyrocrete is degrading) at the proper time following proper procedures. Nothing will prevent this Court from affording complete relief to the necessary parties.

---

[59]  BP Products reserves and does not waive any and all rights and claims that it has, had or may come to have against DII and Land Coast.
[60]  *See* Trinity Mem. in Supp. of Mot. to Dismiss at 6-7 [Dkt. # 29].

### 4.    Louisiana Is Not "Inherently" More Convenient.

Defendants baldy assert that Louisiana is an "inherently" more convenient forum, based on little more then their assertion that the issue in this litigation is whether Pyrocrete, which was purchased and installed in Louisiana and Texas, is defective or was improperly applied.[61]  This question will be an issue in the litigation to be sure.  Defendants neglect to mention, however, that they knew from the outset that the coated steel was bound for Indiana and that the steel would be installed at the Indiana refinery.  The parties acknowledge that this dispute turns on the condition of the Pyrocrete at the Indiana refinery and requires the parties to be on-site at the Indiana refinery to examine BP Products' damages (which are continuing to evolve as additional Pyrocrete fails), and to monitor its remediation efforts on an ongoing basis.[62]   Accordingly, the parties *will already be in Indiana* as part of this case.  For example, Carboline has stated that, "it is absolutely necessary that [it] have an opportunity to monitor the survey and work as it occurs.  That does not necessarily mean every beam and column, but it does mean a sufficient sampling to permit Carboline to understand all of the conditions in the plant and to determine the most probable causes of the deterioration."[63]   In addition, BP Products' fact witnesses are located in Indiana, and many of the documents relevant to this dispute are at the Indiana refinery.  Defendants will undoubtedly claim that their testifying experts will need to visit the Indiana refinery to observe and analyze the degradation.  For purposes of preserving and accessing the evidence in this case—the Pyrocrete and related documents—the Northern District of Indiana is by far the most convenient forum.

Moreover, AMC may have performed work relevant to this litigation in Louisiana, but

---

[61]    AMC/Tecon Mem. in Supp. of Mot. to Dismiss at 17 [Dkt. # 32].

[62]    Ex. 5, 11/7/12 Ltr. from J. Walsh to C. Shapiro; Ex. 6, 8/16/12 Ltr. from G. Brown to C. Shapiro; Ex. 7, Trinity Request for Entry Upon Land for Inspections.

[63]    Ex. 6, 8/16/12 Ltr. from G. Brown to C. Shapiro.

defendants ignore the fact that the other defendants are not Louisiana companies and did not perform work in Louisiana.  Carboline's principal place of business is Missouri; Schuff's is Arizona; and Trinity and Tecon's is Texas. AMC is, in fact, the *only* Louisiana company in this case.  In fact, upon information and belief, the product at issue—Pyrocrete 241—is produced at Carboline's plant in Virginia.[64]  Accordingly, AMC and Tecon should not be heard to argue that this litigation should proceed in Louisiana when all of BP Products' damages are occurring in Indiana and the Pyrocrete was manufactured in Virginia.

Given the disperse locations of defendants, the location of BP Products' injury—the only injury at issue—and this Court's close proximity to two major airports (Midway International and O'Hare International), at best, Indiana and Louisiana are equally convenient.  *Finn*, 2011 WL 2893645, at *4 (denying to stay in favor of similar proceeding where, "the federal and state forums [had] interchangeable conveniences").  As such, this factor weighs against abstention.

### 5. The Lack Of A Federal Question Does Not Favor Abstention.

The absence of a federal question is hardly a compelling reason to abstain.  *Miller Brewing Co. v. ACE U.S. Holdings, Inc.*, 391 F. Supp. 2d 735, 743 (E.D. Wis. 2005) ("the absence of a federal issue is not a compelling argument for *Colorado River* abstention") (citations omitted); *Midwest Dental Prods. Corp. v. Kinetic Instruments, Inc.*, 1990 WL 19973, at *8 (N.D. Ill. Feb. 23, 1990) (same).  Moreover, this court is just as capable of resolving this dispute as a Louisiana state court because this case does not arise solely under Louisiana state law.  In fact, the laws of multiple states including Texas, Indiana, Illinois and Missouri, in addition to Louisiana, may apply to some of the claims at issue.  As a result, this Court is just as capable as deciding these issues as a Louisiana state court.

---

[64]  *See* Carboline's website, http://www.carboline.com/media/14179/Fireproofing%20Leed%20Brochure%206-11.pdf (last visited Feb. 12, 2013).

24

### 6.      The State Court Case Is Subject To Removal.

Carboline has already removed the Louisiana action claiming that all of the defendants except Carboline were improperly joined and, as of today, the Louisiana action remains in federal court.  Nonetheless, even if the Louisiana action is remanded to state court, that "weighs significantly against abstention."  *See Miller Brewing Co.*, 391 F. Supp. 2d at 743.  If the court were to abstain, BP Products could be deprived of its opportunity to litigate in a federal form even though diversity of citizenship exists.  *Id.* ("If I stay or dismiss the action, Miller will lose its opportunity to litigate in a federal forum even though there is diversity of citizenship . . . . Diversity litigants are not second-class citizens."); *see also AXA Corp. Solutions v. Underwriters Reins. Corp.*, 347 F.3d 272, 279 (7th Cir. 2003) ("What AXA will lose if the Illinois federal case is stayed or dismissed is the opportunity to litigate in a federal forum-an opportunity to which it is entitled under 28 U.S.C. § 1332, in the absence of extraordinary circumstances.").[65] Accordingly, this factor weighs in favor of this Court exercising jurisdiction.

In sum, defendants failed to demonstrate "exceptional circumstances" that should lead this Court to depart from its "virtually unflagging obligation" to exercise its jurisdiction. *TruServ Corp.*, 419 F.3d at 593.[66]

### CONCLUSION

For the reasons set forth above, defendants' motions to dismiss should be denied.

---

[65]    *Scion 2040 Managing Member LLC v. EBREF Holding Co., LLC*, 2010 WL 4923064, at *3 (E.D. Wis. Nov. 29, 2010) ("Factors weighing against abstention include the fact that the parties agree that the Delaware action is not removable to federal court. Therefore, if the court were to grant the defendants' motion to stay, because the Delaware court's decision on identical issues would likely be afforded preclusive effect, the practical result may well be to deny 2040 its day in federal court. 2040 has chosen to litigate this case in federal court and that choice cannot be casually brushed aside."); *Midwest Dental*, 1990 WL 19973, at *8 ("If removal is available to the federal plaintiff, it counts in favor of abstention."); *J.I.K. Realty Co., Inc. v. Steward*, 1989 WL 165114, at *7 (N.D. Ill. Dec. 28, 1989) (same).

[66]    *See, e.g., Am. Family Mut. Ins. Co. v. Mill Installation & Constr., Inc.*, 2011 WL 4373347, at *3 (S.D. Ind. Sept. 19, 2011) (where only some of the factors weighed in favor of abstention, exceptional circumstances did not exist supporting abstention); *Ind. Bell Tel. Co. v. Commc'ns Venture Corp.*, 2011 WL 1135912, at *4-5 (S.D. Ind. Mar. 25, 2011) (same).

Dated:  February 15, 2013

Respectfully submitted,

/s/ Erin Linder Hanig

John D. LaDue (19039-71)
Erin Linder Hanig (29113-71)
LADUE CURRAN & KUEHN LLC
200 First Bank Building
205 West Jefferson Blvd.
South Bend, Indiana  46601
Telephone:  (574) 968-0760
Facsimile:  (574) 968-0761
jladue@lck-law.com
ehanig@lck-law.com

OF COUNSEL

David J. Zott, P.C. (admitted *pro hac vice*)
Sarah P. Herlihy (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
david.zott@kirkland.com
sarah.herlihy@kirkland.com

27

## CERTIFICATE OF SERVICE

I, Erin Linder Hanig, certify that on February 15, 2013, I served a copy of **BP Products'** **Response in Opposition to Defendants' Motions to Dismiss** and attached exhibits electronically on all registered CM/ECF users that have appeared in this case through the CM/ECF system.

 /s/  Erin  Linder  Hanig
Erin Linder Hanig (29113-71)

28